# EXHIBIT
# 1

CC~Y

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 16 2009

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
SHAUNYA WESLEY

1   **MILSTEIN, ADELMAN & KREGER, LLP**
    Wayne S. Kreger, State Bar No. 154759
2   wkreger@maklawyers.com
    Paul Stevens, State Bar No. 207107
3   pstevens@maklawyers.com
    Jennifer B. Steinberg, State Bar No. 255335
4   jsteinberg@maklawyers.com
    2800 Donald Douglas Loop North
5   Santa Monica, California 90405
    Telephone: (310) 396-9600
6   Fax: (310) 396-9635

7   Attorneys for Plaintiff,
    Lisa Fremont
8

9                  **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

10                      **FOR THE COUNTY OF LOS ANGELES**

11

12   LISA FREMONT, individually and on behalf of     Case No. _____ **BC417969**
     all others similarly situated,
13                                                    **CLASS ACTION**
                         Plaintiff,
14                                                    COMPLAINT
                         vs.
15                                                    1.  FALSE AND MISLEADING
     JOHNSON & JOHNSON, a New Jersey                      ADVERTISING IN VIOLATION OF
16   Corporation, doing business as RoC Skin Care;        BUSINESS AND PROFESSIONS CODE
     JOHNSON & JOHNSON CONSUMER                           § 17200, *et seq.*
17   COMPANIES, INC., doing business as RoC Skin    2.  FALSE AND MISLEADING
     Care; and DOES 1 through 100, inclusive,             ADVERTISING IN VIOLATION OF
18                                                        BUSINESS AND PROFESSIONS CODE
                         Defendants.                      § 17500, *et seq.*
19                                                    3.  VIOLATION OF CALIFORNIA CIVIL
                                                         CODE § 1750, *et seq.* (Consumer Legal
20                                                       Remedies Act)
21
                                                     **DEMAND FOR JURY TRIAL**
22

23          Plaintiff Lisa Fremont ("Plaintiff"), individually and on behalf of all other similarly situated

24   purchasers of products from the RoC Skin Care line (the "Class"), bring this complaint against

25   JOHNSON & JOHNSON, a New Jersey Corporation, doing business as RoC Skincare, JOHNSON

26   & JOHNSON CONSUMER COMPANIES, INC., a New Jersey Corporation, (referred to herein as

27   "Defendants"), and Does 1 through 100, inclusive (sometimes collectively referred to herein as

28   "Defendants") and alleges as follows:

                                                     1
                                   **CLASS ACTION COMPLAINT**

EXHIBIT 1  PAGE 7

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

## NATURE OF THE ACTION

1.      This is a class action for restitution and injunctive relief against Defendants for unfair business practices and false and misleading advertising in violation of <u>Business & Professions Code</u> Section 17200, *et seq.*, <u>Business & Professions Code</u> Section 17500, *et seq.* and <u>Civil Code</u> Section 1750, *et seq.*  The advertising at issue involves specifically Defendants' "Anti-Wrinkle" skin care product line. RoC's "Anti-Wrinkle" skin care line includes the products: Retinol Correxion Deep Wrinkle Serum, Retinol Correxion Deep Wrinkle Night Cream, Retinol Correxion Deep Wrinkle Daily Moisturizer SPF 15, Retinol Correxion Eye Cream, Retinol Correxion Hand Repair SPF 15, Retinol Actif Rup Anti-Wrinkle Moisturizing Treatment Night, and Retinol Actif Rup Anti-Winkle Moisturizing Treatment Day SPF 15 (sometimes collectively referred to herein as the "Products").

2.      Defendants' advertising – television, print and some packaging – conveys a single, consistent false and misleading message to consumers: that the Products can visibly reduce wrinkles and can take ten years off of the look of one's skin.  Some of the more infamous, specific claims include:

     A.      "Give[s] 10 years back to the look of your skin"

     B.      "Visibly reduces fine lines and wrinkles"

     C.      "Visibly reduces even deep wrinkles"

     D.      "Give us 12 weeks, get back 10 years" and,

     E.      "Has been scientifically shown to work within the skin's surface layers to reduce the visible signs of aging."

     F.      "Visibly reduces age spots."

3.      Those claims (as well as many others) about the Products are false and misleading. Defendants do not possess the requisite evidence to substantiate the claims about the Products. As such, Defendants have violated <u>Business & Professions Code</u> Section 17200, *et seq.*, <u>Business & Professions Code</u> Section 17500, *et seq.* and <u>Civil Code</u> Section 1750, *et seq.*

4.      During the course of this deception, Defendants have sold millions of units of the Products based upon the false promises and misleading advertisements.

2

**CLASS ACTION COMPLAINT**

EXHIBIT 1  PAGE 8

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

1    5.    Plaintiff would not have purchased the Products had Defendant not made false

2    representations about the Products.  Plaintiff paid a premium for the Products because of the belief

3    that they had qualities or characteristics that they did not in fact have.  Plaintiff paid this premium

4    because of the false representations of Defendants.  Henceforth, Plaintiff and the Class have

5    suffered injury in fact and have lost money as a result of Defendants' false representations.

6

7                          **JURISDICTION AND VENUE**

8    6.    This Court has jurisdiction over all causes of action asserted herein pursuant to the

9    California Constitution, Article VI, § 10, because this case is a cause not given by statute to other

10   trial courts.  Plaintiff has standing to bring this action pursuant to Business & Professions Code §

11   17200, *et seq.*

12   7.    Venue is proper in this Court because Plaintiff resides in Los Angeles County and

13   purchased the Products in Los Angeles County.  Defendant receives substantial compensation

14   from sales in Los Angeles County, and Defendant made numerous misrepresentations which had

15   a substantial effect in Los Angeles County, including, but not limited to, television, magazine,

16   newspaper and internet advertisements.

17   8.    Defendant and other out-of-state participants can be brought before this Court

18   pursuant to the provisions of Code of Civil Procedure § 395.5.

19

20                              **PARTIES**

21   9.    Plaintiff is, and at all times relevant hereto was, an individual residing in Los

22   Angeles County, California.  Plaintiff purchased the Products in Los Angeles County.  In doing

23   so, Plaintiff relied upon advertising and other promotional material which were prepared and

24   approved by Defendant and its agents and disseminated through national advertising media,

25   containing the misrepresentations alleged herein and designed to encourage those seeking

26   assistance in changing the appearance of their skin to purchase the Products.  Plaintiff did not

27   notice a visible decrease in wrinkles and does not believe that she looks any younger after using

28   the Products.

EXHIBIT 1  PAGE 9

1      10.    Defendant Johnson & Johnson is a corporation organized under the laws of the State

2  of New Jersey.   Johnson & Johnson is the world's second largest and most broadly based

3  manufacturer of health care products.   The company holds a significant share of the consumer

4  and pharmaceutical markets, and is the world's largest developer and manufacturer of medical

5  treatment and diagnostic devices. Johnson & Johnson is a multinational corporation with

6  approximately 119,200 employees worldwide, working in more than 250 operating companies in

7  57 countries.   According to its most recent annual filing with the United State Securities and

8  Exchange Commission, Johnson & Johnson had approximately $63.75 billion in sales in 2008.

9  The corporation maintains its principal business office at One Johnson and Johnson Plaza, New

10  Brunswick, NJ 08933.   Johnson & Johnson, directly and through its agents, has substantial

11  contacts with and receives benefits and income from and through the State of California.   Johnson

12  & Johnson is the owner, manufacturer and distributor of the Products, and is the company that

13  created and/or authorized the false, misleading and deceptive advertisements and/or packaging for

14  the Products.

15      11.    Defendant Johnson & Johnson Consumer Companies, Inc. is a corporation

16  organized under the laws of the State of New Jersey.   Johnson & Johnson Consumer Companies,

17  Inc. is a subsidiary of Johnson & Johnson.

18      12.    The true names and capacities, whether individual, corporate, associate or otherwise

19  of certain manufacturers, distributors and/or their alter egos sued herein as DOES 1 through 100

20  inclusive are presently unknown to Plaintiff who therefore sues these Defendants by fictitious

21  names.   Plaintiff will seek leave of this Court to amend the Complaint to show their true names

22  and capacities when the same have been ascertained.   Plaintiff is informed and believes and based

23  thereon alleges that DOES 1 through 100 were authorized to do and did business in Los Angeles

24  County.   Plaintiff is further informed and believes and based thereon alleges that DOES 1 through

25  100 were and/or are, in some manner or way, responsible for and liable to Plaintiff for the events,

26  happenings, and damages hereinafter set forth below.

27      13.    Plaintiff is informed and believes and based thereon alleges that at all times relevant

28  herein each of the Defendants was the agent, servant, employee, subsidiary, affiliate, partner,

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

4

**CLASS ACTION COMPLAINT**

EXHIBIT 1  PAGE 10

1    assignee, successor-in-interest, alter ego or other representative of each of the remaining

2    Defendants and was acting in such capacity in doing the things herein complained of and alleged.

3        14.    In committing the wrongful acts alleged herein, Defendants planned and participated

4    in and furthered a common scheme by means of false, misleading, deceptive and fraudulent

5    representations to induce members of the public to purchase the Products.    Defendants

6    participated in the making of such representations in that each did disseminate or cause to be

7    disseminated said misrepresentations.

8        15.    Defendants, upon becoming involved with the manufacture, advertising, and sale of

9    the Products, knew or should have known that the claims about the Products and, in particular, the

10   claims suggesting and/or outright stating that the Products could, in any way, cause a person to

11   look 10 years younger or visibly reduce even deep wrinkles, were false, deceptive and misleading.

12   Defendants affirmatively misrepresented the "benefits" of the Products in order to convince the

13   public and the Products users to purchase and use the Products, resulting in profits of millions of

14   dollars to Defendants, all to the damage and detriment of the consuming public.  Thus, in addition

15   to the wrongful conduct herein alleged as giving rise to primary liability, Defendants further aided

16   and abetted and knowingly assisted each other in breach of their respective duties and obligations

17   as herein alleged.

18

19                              **CLASS ACTION ALLEGATIONS**

20       16.    Plaintiff brings this action on her own behalf and on behalf of all other persons

21   similarly situated.  The Classes which Plaintiff seek to represent comprises: All persons residing

22   in the State of California who purchased RoC's "Anti-Wrinkle" line of Products, specifically for

23   personal use and not for resale during the time period July 16, 2005 through the present.  RoC's

24   "Anti-Wrinkle" line includes the following products: Retinol Correxion Deep Wrinkle Serum,

25   Retinol Correxion Deep Wrinkle Night Cream, Retinol Correxion Deep Wrinkle Daily

26   Moisturizer SPF 15, Retinol Correxion Eye Cream, Retinol Correxion Hand Repair SPF 15,

27   Retinol Actif Rup Anti-Wrinkle Moisturizing Treatment Night, and Retinol Actif Rup Anti-

28   Winkle Moisturizing Treatment Day SPF 15.  Excluded from the Class are Defendants' officers,

<div style="text-align:left; font-size:small;">Milstein, Adelman &Kreger, LLP<br>2800 Donald Douglas Loop North<br>Santa Monica, California 90405</div>

                                             5
                              **CLASS ACTION COMPLAINT**

EXHIBIT 1  PAGE 11

1  directors, and employees, and any individual who received remuneration from Johnson & Johnson

2  in connection with that individual's use or endorsement of the RoC "Anti-Wrinkle" Products.

3      17.  The Class comprises many thousands of persons throughout California, the joinder

4  of whom is impracticable, and the disposition of their claims in a Class Action will benefit the

5  parties and the Court.  The Class is sufficiently numerous because millions of units of the

6  Products have been sold in the State of California during the Class Period.

7      18.  There is a well-defined community of interest in the questions of law and fact

8  involved affecting the parties to be represented.  The questions of law and fact common to the

9  Class predominate over questions which may affect individual Class members.    Common

10  questions of law and fact include, but are not limited to, the following:

11          a.  Whether Defendants' conduct is an unlawful business act or practice within the

12              meaning of Business and Professions Code section 17200, *et seq.*;

13          b.  Whether Defendants' conduct is a fraudulent business act or practice within the

14              meaning of Business and Professions Code section 17200, *et seq.*;

15          c.  Whether Defendants' advertising is untrue or misleading within the meaning of

16              Business and Professions Code section 17500, *et seq.*;

17          d.  Whether Defendants made false and misleading representations in their advertising

18              and packaging of the Products;

19          e.  Whether Defendants knew or should have known that the representations were false;

20              and

21          f.  Whether Defendants represented that the Products have characteristics, benefits, uses

22              or quantities which those products do not have.

23      19.  Plaintiff's claims are typical of the claims of the Class, and Plaintiff will fairly and

24  adequately represent and protect the interests of the Class.  Plaintiff has retained competent and

25  experienced counsel in class action and other complex litigation.

26      20.  Plaintiff would not have purchased the Products had Defendant not made false

27  representations about the Products.  Plaintiff paid a premium for the Products because of the belief

28  that they had qualities or characteristics that they did not in fact have.  Plaintiff paid this premium

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

6

**CLASS ACTION COMPLAINT**

EXHIBIT 1  PAGE 12

1    because of the false representations of Defendants. Henceforth, Plaintiff and the Class have

2    suffered injury in fact and have lost money as a result of Defendants' false representations.

3        21.      A class action is superior to other available methods for fair and efficient adjudication

4    of this controversy. The expense and burden of individual litigation would make it impracticable

5    or impossible for Class members to prosecute their claims individually.

6        22.      The trial and litigation of Plaintiff's claims are manageable. Individual litigation of

7    the legal and factual issues raised by Defendants' conduct would increase delay and expense to all

8    parties and the court system. The class action device presents far fewer management difficulties

9    and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive

10    supervision by a single court.

11        23.      Defendants have acted on grounds generally applicable to the entire Class, thereby

12    making final injunctive relief and/or corresponding declaratory relief appropriate with respect to

13    the Class as a whole. The prosecution of separate actions by individual Class members would

14    create the risk of inconsistent or varying adjudications with respect to individual members of the

15    Class that would establish incompatible standards of conduct for the Defendants.

16        24.      Absent a class action, Defendants will likely retain the benefits of their wrongdoing.

17    Because of the small size of the individual Class members' claims, few, if any, Class members

18    could not afford to seek legal redress for the wrongs complained of herein. Absent a representative

19    action, the Class members will continue to suffer losses and Defendants will be allowed to continue

20    these violations of law and to retain the proceeds of their ill-gotten gains.

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

*Milstein, Adelman &Kreger, LLP*
*2800 Donald Douglas Loop North*
*Santa Monica, California 90405*

**CLASS ACTION COMPLAINT**

EXHIBIT 1 PAGE 13

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

## FACTUAL BACKGROUND

### The Anti-Aging Cream Industry

25.     With the increased popularity and availability of cosmetic surgery in the 20th Century, the United States' consumers have focused on ways to maintain their youthful appearance for as long as possible.

26.     This focus has spanned a number of industries targeting consumers looking to defy nature and reverse the effects of aging.

27.     This epidemic has spawned a multi-billion dollar industry known as the "skin care" industry. Anti-aging creams are included in this multibillion dollar skin care category.

28.     Sales of anti-aging skin creams alone reached approximately $1.6 billion in 2008.

29.     There are many different types of products which are marketed as having the ability to make a person look youthful. Included amongst these products are those which focus on reducing age spots, those which claim to reduce the appearance of wrinkles, and those which claim to diminish the appearance of stretch marks and cellulite. Many of the country's leading cosmetic companies, including Johnson & Johnson, have jumped on the anti-aging bandwagon, making bold and unsubstantiated claims about their products.

### Consumer Reports Study

30.     In 2007 Consumer Reports conducted a study which tested various top-selling "anti-wrinkle" creams ("CR Study"). The objective of the study was to test the effectiveness of these products and to compare the results of each of the different products.

31.     The study was a 12-week study and included only women between the ages of 30 and 70 with light skin, which is the type most susceptible to developing fine lines and wrinkles. Included in the study was RoC's Retinol Correxion Deep Wrinkle product line.

32.     The creams were purchased in retail stores and all labels were covered so the women wouldn't know which brand they were using. Most of the product lines consisted of a day cream and a night cream, which were applied every day at the appropriate time. Each woman used a test

EXHIBIT 1  PAGE 14

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

1   product on one side of her face and the lab's standard moisturizer on the other for comparison.

2   The women did not know which side of their face contained the test product.

3       33.    The test subjects' skin was examined at the beginning of the 12 week test, four

4   weeks into it, and at the end, using various measures

5       34.    The CR study combined the overall results of all of the tests and grouped the

6   products into three categories, namely, "slightly more effective," "average performance," and

7   "slightly less effective."   The RoC Retinol Correxion Deep Wrinkle product line was in the

8   lowest rated category, "slightly less effective."

9       35.    Further, each product was rated in terms of the "moisturizing" effects, the "anti-

10  wrinkle" effects, and the subjects' "tolerance" to the product.  Each of these categories was rated

11  either "excellent," "very good," "good," "fair," or "poor."  RoC Retinol Correxion Deep Wrinkle

12  product line's "anti-wrinkle" effectiveness was rated "fair," which was the lowest rating any of

13  the products received in any category.

14      36.    Simply put, the CR study shows that while some topical creams may have the ability

15  to reduce the appearance of fine lines in certain people, each individuals' skin will react

16  differently to each product.  Further, creams will not reduce the average depth of wrinkles by an

17  amount that will be noticeable or substantial to the naked eye.  Finally, the RoC Retinol Correxion

18  Deep Wrinkle product line was found to be among the least effective of some of the best selling

19  products on the market.

20

21  **The "Michigan" Study is unreliable**

22      37.    In 2007 the University of Michigan Medical School conducted a randomized,

23  double-blind, vehicle-controlled study to assess the effectiveness of topical retinol in improving

24  the clinical signs of naturally aged skin ("The Michigan Study").

25      38.    The study consisted of 36 elderly subjects, with a mean age of 87. By the end of the

26  study 13 subjects had dropped out, resulting in an outcome based upon 26 participants.  Each

27  participant was treated with a 0.4% retinol lotion on one arm and its vehicle lotion on the opposite

28

<div align="center">9</div>
<div align="center">**CLASS ACTION COMPLAINT**</div>

<div align="right">EXHIBIT 1  PAGE 15</div>

arm.  The treatments were applied up to three times a week in mid-afternoons.  The conclusion of the study was that topical retinol can improve fine wrinkles associated with natural aging.

39.     Many skin care companies have relied upon this study for the ability to make claims about the effectiveness of retinol as a wrinkle-reducing topical cream.

40.     The problems with this study are obvious and plentiful.

41.     First, the study size is small, consisting of only 23 people who completed the Michigan study.  Studies of that size are scientifically deficient and inherently unreliable.

42.     Second, the drop out rate for the Michigan study was high -- over 30%.  In a study of this small size, such a high dropout rate renders the study's results questionable, at best.

43.     Third, there was a lack of a control group.  With any study involving moisturizers or lotions for one's skin, there should be an untreated control group to account for anomalies such as weather which might affect the final results.  The Michigan study contained no such group, so it is impossible to see whether any outside causes may have contributed to the results of the test group.

44.     Fourth, the mean age of the participants in the Michigan study was 87.  In fact, the researchers targeted such a population by specifying that participants in the study must have been a minimum of 80 years old.   Clearly this is not the average population that J&J is attempting to reach with the advertising campaign of the RoC Products.

45.     Fifth, the Michigan study was a 24-week study, yet Defendants advertise their product has showing results over a 12-week period of time.  From a straight statistics perspective, the use of interim data is highly questionable.  When interim data is utilized for any purpose other than those associated with the study, a certain "correction" is typically applied to the interim data to ensure its accuracy.

46.     Finally, the retinol was only tested on participants' arms in the Michigan study.  The RoC Products are specifically made for use on the face (with the exception of one hand cream).  The skin on the arms is of a different elasticity than that of the face or the hands.  In order to be able to make the claims that J&J makes about the RoC Products, any study used must have tested the products on the same area of the body which the products are made for, namely the face and the hands

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

EXHIBIT 1  PAGE 16

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

47. Further, even if the Michigan study were reliable, Defendants' claims about the RoC Products are not substantiated by the Study. The published conclusion of the Michigan study was that "topical retinol improves fine wrinkles associated with natural aging." J&J's claims that the RoC Products can "visibly reduce even deep wrinkles" and can "take 10 years off the look of one's skin" are not authenticated by this conclusion.

**The Combination of Ingredients in the RoC Products Make the "Anti-Wrinkle" Ingredient Ineffective**

48. The mixture of an alpha hydroxyl acid ("AHA") with retinol is an unstable combination. In fact, AHAs inactivate retinol and the two are not supposed to be used together. Each of the RoC Products (other than the three which contain sunscreen) contain retinol along with at least one AHA. With retinol being the only ingredient in the RoC Products with alleged "anti-wrinkle" capabilities, it is a problem that this ingredient

**The Dosage of Retinol in the RoC Products is too Low to be Effective**

49. The Michigan Study was based upon a cream with a 0.4% concentration of retinol. The concentration of retinol in the RoC Products has not been published, but the concentration appears to be very low. Ingredients in cosmetic products must appear separately, in order of decreasing predominance on the package. Retinol is listed very low on the list of ingredients for each product. Specifically, it is listed 33rd in the Retinol Correxion Hand Repair, 29th in the Retinol Correxion Deep Wrinkle Serum, and 20th in the Retinol Correxion Daily Moisturizer. Retinol is never listed higher than 13th on the ingredient list of any of the RoC Products.

50. The placement of retinol far down on the list of ingredients of each product indicates that the retinol is found in very minimal concentration.

///

///

///

///

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

**Johnson & Johnson's Deceptive Marketing of the Products**

51.     Johnson & Johnson markets and advertises the Products in a false and deceptive manner. Johnson & Johnson does so through a uniform and consistent message that the Products can change the appearance of one's skin and can cause consumers to look a certain number of years younger, within a specified period of time.  Johnson & Johnson disseminates this message through a broad range of media, including (without limitation) television commercials, print advertisements, packaging, point-of-purchase displays, and the like.

52.     Examples of Johnson & Johnson's false and misleading advertising are set forth below.

**The RoC Skin Care Website**

53.     RoC's website is filled with various claims about its' products.

54.     On the home page of the website, in large font, it states "THE PROMISE: 10 Years Back"

55.     Immediately beneath this "promise," it states: "THE PROOF: Up to 7x more effective than another leading brand in visibly diminishing signs of aging"

56.     The home page contains a link for those who want to "learn more about the RoC Retinol Correxion Night Cream clinical study."

57.     When consumers click on this link to learn more about the "clinical study," they are taken to a page which contains the "results" of a "clinical study" done on RoC's Retinol Correxion Night Cream v. "another leading brand."  The website fails to mention which brand RoC's product was tested against or who conducted this study.

58.     This page makes the following claims:

a.     "In just 8 weeks of independent clinical testing, RoC RETINOL CORREXION Deep Wrinkle Night Cream was significantly more effective at reducing wrinkles than an anti-aging treatment from another leading brand."

**CLASS ACTION COMPLAINT**

EXHIBIT 1  PAGE 18

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

b. RoC's RETINOL CORREXION Deep Wrinkle Night Cream improved the appearance of eye wrinkles by approximately 18%, which was supposedly four times greater than the results for the "other leading brand."

c. RoC's RETINOL CORREXION Night Cream improved the appearance of forehead wrinkles by approximately 19% which was supposedly four times greater than the results for the "other leading brand."

d. RoC's RETINOL CORREXION Deep Wrinkle Night Cream improved the appearance of crow's feet by approximately 21% which was supposedly seven times greater than the results for the "other leading brand."

e. In the RETINOL CORREXION Deep Wrinkle Night Cream clinical study, 71% of the RoC subjects showed improvement in the appearance of forehead wrinkles, which was supposedly four times greater than the results of the "other leading brand."

f. In the RETINOL CORREXION Deep Wrinkle Night Cream clinical study, 71% of the RoC subjects showed improvement in the appearance of crow's feet, which was supposedly eleven times greater than the results of the "other leading brand."

g. In the RETINOL CORREXION Deep Wrinkle Night Cream clinical study, 71% of the RoC subjects showed improvement in the appearance of under-eye wrinkles, which was supposedly four times greater than the results of the "other leading brand."

h. In the RETINOL CORREXION Deep Wrinkle Night Cream clinical study, 93% of the RoC subjects showed improvement in the appearance of overall photodamage.

59.   In addition, the RoC website makes certain additional claims about each of the products within the "Anti-Wrinkle" skin care line. Such claims include, but are not limited to, the following:

- "Give 10 years back to the look of your skin"
- "Visibly reduces even deep wrinkles."
- "Visibly reduces fine lines and wrinkles"

13

**CLASS ACTION COMPLAINT**

EXHIBIT 1  PAGE 19

Millstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

1  • "RETINOL CORREXION Deep Wrinkle Night Cream [is the] only moisturizer

2  clinically proven to give 10 years back to the look of your skin. This exclusive

3  combination ... is clinically proven to visibly reduce wrinkles while you sleep."

4  • "RoC RETINOL CORREXION Deep Wrinkle Serum stimulates your skin's

5  renewal process and is clinically proven to visibly reduce both fine lines and deep

6  wrinkles

7  • "RoC RETINOL CORREXION Eye Cream [is] specially formulated for the delicate

8  eye area [and] visibly reduces wrinkles around the eyes and crow's feet in 12 weeks.

9  In addition, it evens out dark circles and reduces puffiness in 4 weeks."

10 • "When used daily, RoC RETINOL CORREXION Hand Repair SPF 15 fortifies the

11 outer layer of the skin and is clinically shown to even out the look of discolorations

12 and age spots for more youthful looking hands."

13

14 <u>The RoC Packaging</u>

15   60.   Certain packaging for the Products prominently displays certain "promises" or

16 "benefits" on the front.

17   61.   The claims on their packaging include, but are not limited to the following:

18 • "Visibly reduces deep wrinkles"

19 • "Helps prevent the signs of aging"

20 • "Visibly reduces expression lines and deep wrinkles"

21 • "Visibly lifts eyelids"

22 • "Firms skin around eye"

23 • Reduces puffiness"

24 • "Visibly lifts and firms in one week"

25 • "Defines facial contours"

26 ///

27 ///

28 ///

<div align="center">14</div>

<div align="center">CLASS ACTION COMPLAINT</div>

EXHIBIT 1  PAGE 20

62. The impression conveyed by those bold claims is that the Products can cause consumers to take years off the appearance of their skin.

63. Through its false and deceptive claims, Johnson & Johnson has been successful in duping consumers into purchasing the Products, in the process making millions of dollars for Johnson & Johnson.

64. Defendants' claims are unsubstantiated by their studies, their test results are not derived by the scientific method, and their work product fails to amounts to good science.

65. Plaintiff paid a premium for the Products because of the belief that they had qualities or characteristics that they did not in fact have. Plaintiff paid this premium because of the false representations of Defendants. Henceforth, Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendants' false representations.

## FIRST CAUSE OF ACTION

## FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200, *et seq.*

### (By Plaintiff against all Defendants)

66. Plaintiff repeats and realleges the allegations set forth above, and incorporates the same as if set forth herein at length.

67. This cause of action is brought pursuant to Business and Professions Code § 17200, *et seq.*, on behalf of a Class consisting of all persons who purchased the Products in the State of California for personal use and not for resale during the time period July 16, 2005 through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Johnson & Johnson in connection with that individual's use or endorsement of the Products.

68. In the advertising of the Products, Johnson & Johnson makes false and misleading statements regarding the benefits and the efficacy of the Products, particularly as it applies to changing the appearance of one's skin, all as set forth above.

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

15

**CLASS ACTION COMPLAINT**

EXHIBIT 1 PAGE 21

69.     Johnson & Johnson does not have the requisite competent and reliable scientific evidence to support the claims about the Products made in Defendants' advertising.

70.     Johnson & Johnson is aware that the claims that it makes about the Products are false, misleading and unsubstantiated.

71.     As alleged in the preceding paragraphs, the misrepresentations by Johnson & Johnson of the material facts detailed above constitutes an unfair and fraudulent business practice within the meaning of California Business & Professions Code § 17200.

72.     In addition, Johnson & Johnson's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business & Professions Code §§ 17531 and 17200, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business & Professions Code § 17500.

73.     There were reasonably available alternatives to further Johnson & Johnson's legitimate business interests, other than the conduct described herein.

74.     All of the conduct alleged herein occurs and continues to occur in Johnson & Johnson's business.   Johnson & Johnson's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

75.     Pursuant to Business & Professions Code §§ 17203 and 17535, Plaintiff and the members of the Class seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of advertising the sale and use of the Products.   Likewise, Plaintiff and the members of the Class seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations.

76.     Plaintiff would not have purchased the Products had Defendant not made false representations about the Products.  Plaintiff paid a premium for the Products because of the belief that they had qualities or characteristics that they did not in fact have.  Plaintiff paid this premium

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

16

EXHIBIT 1  PAGE 22

1  because of the false representations of Defendants.  Henceforth, Plaintiff and the Class have

2  suffered injury in fact and have lost money as a result of Defendants' false representations.

### SECOND CAUSE OF ACTION

### FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS &

### PROFESSIONS CODE § 17500, et seq.

**(By Plaintiff against all Defendants)**

77.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

78.    This cause of action is brought pursuant to Business and Professions Code § 17200, et seq., on behalf of a Class consisting of all persons who purchased the Products in the State of California for personal use and not for resale during the time period July 16, 2005 through the present.  Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Johnson & Johnson in connection with that individual's use or endorsement of the Products.

79.    In their advertising of the Products, Defendants make false and misleading statements regarding the benefits and the efficacy of the Products, particularly as it applies to changing the appearance of one's skin, all as set forth above.

80.    Defendants do not have any competent and reliable scientific evidence to support the claims about the Products made in Defendants' advertising.

81.    Defendants are aware that the claims that they make about the Products are false, misleading and unsubstantiated.

82.    As alleged in the preceding paragraphs, the misrepresentations by Defendants of the material facts detailed above constitutes an unfair and fraudulent business practice within the meaning of California Business & Professions Code § 17200.

83.    In addition, Defendants' use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising,

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

17

**CLASS ACTION COMPLAINT**

EXHIBIT 1  PAGE 23

1    and an unlawful business practice within the meaning of <u>Business & Professions Code</u> §§ 17531

2    and 17200, which advertisements have deceived and are likely to deceive the consuming public,

3    in violation of <u>Business & Professions Code</u> § 17500.

4         84.      Pursuant to <u>Business & Professions Code</u> §§ 17203 and 17535, Plaintiff and the

5    members of the Class seek an order of this Court enjoining Defendants from continuing to

6    engage, use, or employ their practice of advertising the sale and use of the Products. Likewise,

7    Plaintiff and the members of the Class seek an order requiring Defendants to disclose such

8    misrepresentations, and additionally request an order awarding Plaintiff restitution of the money

9    wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to

10   disclose the existence and significance of said misrepresentations.

11        85.      Plaintiff would not have purchased the Products had Defendant not made false

12   representations about the Products. Plaintiff paid a premium for the Products because of the belief

13   that they had qualities or characteristics that they did not in fact have. Plaintiff paid this premium

14   because of the false representations of Defendants. Henceforth, Plaintiff and the Class have

15   suffered injury in fact and have lost money as a result of Defendants' false representations.

16

17                           **THIRD CAUSE OF ACTION**

18          **VIOLATION OF CALIFORNIA CIVIL CODE § 1750, *et seq.***

19                      **(By Plaintiff against all Defendants)**

20        86.      Plaintiff repeats and realleges the all allegations of the previous paragraphs, and

21   incorporates the same as if set forth herein at length.

22        87.      This cause of action is brought pursuant to <u>Civil Code</u> § 1750, *et seq.*, the

23   Consumers Legal Remedies Act, on behalf of a Class consisting of all persons who purchased the

24   Products in the State of California for personal use and not for resale during the time period July

25   16, 2005 through the present. Excluded from the Class are Defendants' officers, directors, and

26   employees, and any individual who received remuneration from Johnson & Johnson in connection

27   with that individual's use or endorsement of the Products.

28

<div style="margin-left: 2em; font-style: italic; writing-mode: vertical-rl;">Milstein, Adelman &Kreger, LLP<br>2800 Donald Douglas Loop North<br>Santa Monica, California 90405</div>

18

**CLASS ACTION COMPLAINT**

EXHIBIT 1  PAGE 24

88.     The Consumer Class consists of thousands of persons, the joinder of whom is impracticable.

89.     There are questions of law and fact common to the class, which questions are substantially similar and predominate over questions affecting the individual members, including but not limited to: (a) Whether Defendants represented that the Products have characteristics, benefits, uses or quantities which they do not have; (b) Whether the existence, extent and significance of the major misrepresentations regarding the purported benefits, characteristics and efficacy of the Products violate the Act; and (c) Whether Defendants knew of the existence of these misrepresentations.

90.     The policies, acts, and practices heretofore described were intended to result in the sale of the Products to the consuming public, particularly those seeking a more youthful appearance, and violated and continue to violate § 1770(a)(5) of the Act by representing that the Products have characteristics, benefits, uses or quantities which they do not have.

91.     Defendants fraudulently deceived Plaintiff and the Class by representing that the Products have certain characteristics, benefits, uses and qualities which they do not have (i.e., they can make consumers look years younger).   In doing so, Defendants intentionally misrepresented and concealed material facts from Plaintiff and the Class.  Said misrepresentation and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

92.     Defendants knew that the Products did not cause and/or assist consumers with achieving a more youthful appearance as represented in Defendants' advertisements and on Defendants' packaging.

93.     Defendants' actions as described hereinabove were done with conscious disregard of Plaintiff's rights and Defendants were wanton and malicious in their concealment of the same.

94.     Plaintiff would not have purchased the Products had Defendant not made false representations about the Products.  Plaintiff paid a premium for the Products because of the belief that they had qualities or characteristics that they did not in fact have.  Plaintiff paid this premium

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

EXHIBIT 1  PAGE 25

1    because of the false representations of Defendants. Henceforth, Plaintiff and the Class have

2    suffered injury in fact and have lost money as a result of Defendants' false representations.

3        95.    On June 11, 2009, Plaintiff served Defendant with a letter via certified mail,

4    informing Defendant of the wrongful acts and practices committed and herein described (attached

5    hereto as "Exhibit 1"). The letter identified the practices with particularity and made demand

6    upon said Defendant correct, repair, replace, or otherwise rectify the acts or practices alleged to be

7    in violation of Section 1770. Defendant has taken no such action.

8        96.    Pursuant to § 1780(a) of the Act, Plaintiffs seeks injunctive relief in the form of an

9    order enjoining the above-described wrongful acts and practices of Defendants, including, but not

10   limited to, an order enjoining Defendants from distributing such false advertising and

11   misrepresentations. Plaintiffs shall be irreparably harmed if such an order is not granted.

12       97.    Plaintiffs request that this Court enter such orders or judgments as may be necessary

13   to restore any person in interest any money which may have been acquired by means of such

14   unfair business practices, and for such relief as provided in <u>Civil Code</u> § 1780 and the Prayer For

15   Relief.

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

20

CLASS ACTION COMPLAINT

EXHIBIT 1  PAGE 26

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the members of the Class defined herein, prays for judgment and relief on all Causes of Action as follows:

A.   An order certifying that the action may be maintained as a Class Action;

B.   An order enjoining Defendants from pursuing the policies, acts, and practices complained of herein;

C.   An order requiring Defendants to pay restitution to Plaintiff and all members of the Classes under the First and Second Causes of action;

D.   Actual damages;

E.   Punitive damages;

F.   For pre-judgment interest from the date of filing this suit;

G.   Reasonable attorneys' fees;

H.   Costs of this suit; and

I.   Such other and further relief as the Court may deem necessary or appropriate.

DATED: July 16, 2009                        MILSTEIN, ADELMAN & KREGER, LLP


                                            By: _____
                                                Wayne S. Kreger
                                                Paul D. Stevens
                                                Jennifer Steinberg
                                                Attorneys for Plaintiff, Lisa Fremont


**JURY TRIAL DEMANDED**

Plaintiff demands a jury trial on all triable issues.

DATED: July 16, 2009                        MILSTEIN, ADELMAN & KREGER, LLP


                                            By: _____
                                                Wayne S. Kreger
                                                Paul D. Stevens
                                                Jennifer Steinberg
                                                Attorneys for Plaintiff, Lisa Fremont

Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

21
**CLASS ACTION COMPLAINT**

EXHIBIT 1  PAGE 27

# EXHIBIT 1

EXHIBIT 1  PAGE 28

MILSTEIN, ADELMAN & KREGER, LLP │

*Please Reply To:*
*Paul Stevens, Esq.*
*pstevens@maklawyers.com*

June 11, 2009

**VIA CERTIFIED MAIL**
William C. Weldon
Chairman of the Board and Chief Executive Officer
Johnson & Johnson, Inc.
One Johnson & Johnson Plaza
New Brunswick, NJ 08933

> Re:   **Violation of the California Consumer Legal Remedies Act (California Civil Code section 1750 et seq.) Related to the Advertising and Marketing of the RoC Skin Care Brand's "Anti-Wrinkle" product line**

Dear Mr. Weldon:

You are hereby notified that Johnson & Johnson ("J&J"), during the period June 2005 through the present (the "Class Period"), has violated and continues to violate provisions of the California Consumer Legal Remedies Act (California Civil Code section 1750, et. seq.,) ("CLRA") with respect to the advertising and marketing of the following RoC Skin Care brand products: Retinol Correxion Deep Wrinkle Serum, Retinol Correxion Deep Wrinkle Night Cream, Retinol Correxion Deep Wrinkle Daily Moisturizer SPF 15, Retinol Correxion Eye Cream, Retinol Correxion Hand Repair SPF 15, Retinol Actif Rup Anti-Wrinkle Moisturizing Treatment Night, and Retinol Actif Rup Anti-Winkle Moisturizing Treatment Day SPF 15 (hereafter, the "RoC Products"). J&J's false and deceptive advertising and marketing of the RoC Products has affected Lisa Fremont and thousands of California consumers (the "Plaintiff Class"). The Plaintiff Class continues to enter into transactions and expend money in reliance upon the uniform false and misleading claims contained on the very labels and packaging of the RoC Products, as well as in other J&J advertising. In particular, the uniform, false representations that the RoC Products are "clinically proven" to reduce wrinkles and "give 10 years back to the look of [one's] skin" and that the RoC Products are "Up to 7x more effective than another leading brand in visibly diminishing signs of aging."

Indeed, a recent single-blind, placebo-controlled study comparing top selling "anti-wrinkle" products concluded that after 12 weeks even the best performers reduced the average depth of wrinkles by less than 10 percent, a magnitude of change that was, alas, barely visible to the naked eye. RoC's Retinol Correxion Deep Wrinkle product line, which was included in the study, was found to be the least effective of all the products in its ability to diminish the appearance of fine lines and wrinkles. As an anti-wrinkle product, it received a rating of "fair," which was the lowest rating that was given to any product in the study. J&J is undoubtedly aware of this study and yet continues to aggressively utilize the "give 10 years back to the look of your skin" and "up to 7x more effective than other

EXHIBIT 1  PAGE 29

William C. Weldon
Johnson & Johnson
June 11, 2009
Page - 2 -

leading brand in visibly diminishing signs of aging." Simply stated, the result of the study, in and of itself, demonstrates that J&J's label and advertising claims are in violation of California law.

Further, based on our investigation to date there has only been one published, independent, systematic, double-blind study purporting to prove that retinol diminishes the signs of natural aging. J&J likely relies upon the findings of this study as a basis for its claims about the "anti-wrinkle" and "anti-aging" capabilities of the RoC Products. This study has a number of problems, making it inherently unreliable in general and even more defective as it relates to the particular claims at issue here.

In addition, the combination of the ingredients in the RoC Products have been proven to be ineffective, as studies have shown that when retinol is combined with an alpha hydroxyl acid ("AHA") the AHA inactivates the retinol. All but two of the RoC Products contain various AHAs, including glycolic acid, ascorbic acid and citric acid as well as retinol. These AHAs likely make the retinol unstable and therefore any potential "anti-wrinkle" properties ineffective.

Finally, ingredients in cosmetic products must appear separately, in order of decreasing predominance on the package. (21 CFR 201.66(c)(8) and (d)). Retinol, which is the only ingredient in the RoC Products with a potential "anti-wrinkle" or "anti-aging" effect, is listed as low as 31st on the list of ingredients of one of the RoC Products, and is not listed before 13th in any of them. In fact, for one product, retinol is listed dead last. This indicates that the concentration of the retinol, already destabilized by the presence of AHAs, is extremely low.

As set forth herein, J&J, in connection with its advertising and marketing of the RoC Products, has violated California Civil Code section 1770(a)(5) and 1770(a)(7) by representing that the RoC Products (i) have "sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which [they do] not have," and/or (ii) are of "a particular standard, quality, or grade," when they are of another. Some details with respect to some of these claims are set forth below. However, same is not intended to provide J&J with an exhaustive list of each and every aspect of its advertising that violates the relevant sections of the CLRA; rather, it is simply to advise J&J of certain illustrative examples.

A.    **The Consumer Reports Study Call J&J's Claims Into Question**

In 2007 a study was conducted which tested the effectiveness of various top-selling "anti-wrinkle" cream. *Wrinkle Creams: Selling Hope In a Jar* (January 2007) Consumer's Union of U.S., Inc., found at http://www.consumerreports.org/cro/home-garden/beauty-personal-care/cosmetics/wrinkle-creams-1-07/overview/0107_cream_ov_1.htm?resultPageIndex=1&resultIndex=1&searchTerm=wrinkle%20creams (hereafter, "CR study").

EXHIBIT 1  PAGE 30

William C. Weldon
Johnson & Johnson
June 11, 2009
Page - 3 -

Generally speaking, the CR study tested the effectiveness of various top-selling "anti-wrinkle" creams and compared the results of the different products. The CR study found that even the best performers reduced the average depth of wrinkles by less than 10 percent, a magnitude of change that was barely visible to the naked eye. The CR study also noted that reactions to individual products varied significantly amongst the participants. In fact, every product failed completely for some test subjects. This indicates that it would be impossible to guarantee that any one product would react the same way to every individual who uses it. Further, the CR study found no relationship between the types of active ingredients and their overall performance, indicating that supposedly inactive ingredients in products can affect the performance and absorption of the active ingredients.

The CR study was a 12 week study which used a sample of top-selling mass market lines as well as other costlier products. The study consisted of women between the ages of 30 and 70 with light skin, which is the type most susceptible to developing fine lines and wrinkles. Included in the study was RoC's Retinol Correxion Deep Wrinkle product line. The creams were purchased in retail stores and all labels were covered so the women wouldn't know which brand they were using. Most of the product lines consisted of a day cream and a night cream, which were applied every day at the appropriate time. Each woman used a test product on one side of her face and the lab's standard moisturizer on the other for comparison. The women did not know which side of their face contained the test product. The test subjects' skin was examined at the beginning of the 12 week test, four weeks into it, and at the end, using various measures. These measures were as follows:

- With a high-tech optical device that can detect changes in wrinkle depth and skin roughness of as little as 1/6,000 of an inch, the study measured changes in the crow's-feet area, where wrinkles are most visible and easiest to assess. The study also measured each product's moisturizing abilities using a device called a corneometer

- Dermatologic technicians at the lab evaluated each woman in person. Participants also gave their opinion about the effectiveness, odor, and cosmetic acceptability of the product they used, and any unwelcome side effects such as irritation or redness

- Further, sensory panelists examined photos of the crow's-feet area of the subjects to score effectiveness. To keep panelists objective, the panelists were not told whether the pictures they were studying were "before," "during," or "after."

The CR study combined the overall results of all of the tests and grouped the products into three categories, namely, "slightly more effective," "average performance," and "slightly less effective." The RoC Retinol Correxion Deep Wrinkle product line was in the lowest rated category, "slightly less effective." Further, each product was rated in terms of the "moisturizing" effects, the "anti-wrinkle" effects, and the subjects' "tolerance" to the product. Each of these categories was rated either "excellent," "very good," "good,"

EXHIBIT 1  PAGE 31

William C. Weldon
Johnson & Johnson
June 11, 2009
Page - 4 -

"fair," or "poor." RoC Retinol Correxion Deep Wrinkle product line's "anti-wrinkle"
effectiveness was rated "fair," which was the lowest rating any of the products received in
any category.

Simply put, the CR study shows that while some topical creams may have the
ability to reduce the appearance of fine lines in certain people, each individuals' skin will
react differently to each product. Further, creams will not reduce the average depth of
wrinkles by an amount that will be noticeable or substantial to the naked eye. Finally, the
RoC Retinol Correxion Deep Wrinkle product line was found to be among the least
effective of some of the best selling products on the market.

**B.     The Study Which Has Been Relied Upon to Show That Retinol Reduces the
        Signs of Aging is Unreliable**

In 2007 the University of Michigan Medical School conducted a randomized,
double-blind, vehicle-controlled study to assess the effectiveness of topical retinol in
improving the clinical signs of naturally aged skin. See Kafi R, Kwak H. et al.
Improvement of Naturally Aged Skin with Vitamin A (Retinol). Journal of the American
Medical Association, Arch Dermatol. 2007; 143(5):606-612 (hereinafter, "Michigan
study")

The study consisted of 36 elderly subjects, with a mean age of 87. By the end of
the study 13 subjects had dropped out, resulting in an outcome based upon 26 participants.
Each participant was treated with a 0.4% retinol lotion on one arm and its vehicle lotion on
the opposite arm. The treatments were applied up to three times a week in mid-afternoons.
The conclusion of the study was that topical retinol can improve fine wrinkles associated
with natural aging.

The problems with this study are substantial.

1.   Study Size

The study size is small, consisting of only 23 people who completed the study.
Studies of that size are scientifically deficient and inherently unreliable – especially given
the nature and prominence of the advertising claims made by J&J. See Halpern S.,
Karlawish J., Berlin J. The Continuing Unethical Conduct of Underpowered Clinical Trials.
Journal of the American Medical Association, July 17, 2002, overview can be found at:
http://www.uphs.upenn.edu/news/News_Releases/july02/JAMA.html. That said, we
expect (and believe others will expect) more from a company such as J&J.

EXHIBIT 1  PAGE 32

William C. Weldon
Johnson & Johnson
June 11, 2009
Page - 5 -

2. Drop out rate

The drop out rate for the study is over 30 percent (13 of 36). In a study of this small
size, such a high dropout rate renders the study's results questionable, at best. In particular,
the dropout rate in a "quality" study (i.e., a large scale trial) should not exceed 10 percent
across the active groups. The high dropout rate signifies a high degree of bias which is
problematic. We understand that it is commonplace to actually start the study anew when
there is such a high dropout rate amongst the study population.

3. Lack of Control Group.

With any study involving moisturizers or lotions for one's skin, there should be an
untreated control group to account for such anomalies as weather which might affect the
final results. See Marenus, Kenneth. "Skin Conditioning Benefits of Moisturizing
Products." Cosmetic Substantiation Claims. New York: Marcel Dekker, 1998. Here, there
was no such group, so it is impossible to determine whether any outside causes may have
contributed to the results of the test group.

4. The Age of the Participants

The mean age of the participants in the Michigan study was 87. The youngest
participant was 80. In fact, the researchers targeted such a population by specifying that
participants in the study must have been a minimum of 80 years old. Clearly this is not the
average population that J&J is attempting to reach with the advertising campaign of the
RoC Products. Relying on results of a study which tested such a drastically different age
group is deceitful and the results unreliable.

5. The Use of Interim Data

The Michigan study was a 24-week study but the claims made by RoC are based on
a 12-week challenge. From a straight statistics perspective, the use of interim data is highly
questionable. (Indeed, we believe that the use of interim data to substantiate efficacy
claims, ultimately, renders the claims unsupported.) When interim data is utilized for any
purpose other than those associated with the study, a certain "correction" is typically
applied to the interim data to ensure its accuracy. We are confident that if a correction was
not utilized at the twelve-week level, any claims made about the interim data would not
meet the definition of competent and reliable scientific evidence.

EXHIBIT 1  PAGE 33

William C. Weldon
Johnson & Johnson
June 11, 2009
Page - 6 -

6.   The Retinol Lotion was Tested Only on the Participants' Arms

The RoC Products are specifically made for use on the face (with the exception of one hand cream). We find it questionable to rely on a study which tested retinol only on the subject's upper arms. The skin on the arms is of a different elasticity than that of the face or the hands. Iin order to be able to make the claims that J&J makes about the RoC Products, any study used must have tested the products on the same area of the body which the products are made for, namely the face and the hands.

7.   The J&J Claims about the RoC Products are not Substantiated by the Results of the Study

Finally, even if we put aside all of the aforementioned problems with the study and accepted it as scientifically reliable, the claims made by J&J are not substantiated by the results of the study. The published conclusion of the Michigan study was that "topical retinol improves fine wrinkles associated with natural aging." J&J's claims that the RoC Products can "visibly reduce even deep wrinkles" and can "take 10 years off the look of one's skin" are not authenticated by this conclusion.

C.   **The Combination of Ingredients in the RoC Products Make the "Anti-Wrinkle" Ingredient Ineffective**

It is widely accepted that the mixture of an AHA with retinol is an unstable combination. In fact, AHAs inactivate retinol and the two are not supposed to be used together. Each of the RoC Products (other than the three which contain sunscreen) contain retinol along with at least one AHA. With retinol being the only ingredient in the RoC Products with alleged "anti-wrinkle" capabilities, we find it unsettling that this ingredient may be deactivated by the addition of the AHA(s).

D.   **The Dosage of Retinol in the RoC Products is Too Low to Be Effective**

The Michigan study was based upon a cream with a 0.4% concentration of retinol. The concentration of retinol in the RoC Products has not been published, so we are forced to estimate as to the percentage of concentration in the product. As previously stated, ingredients in cosmetic products must appear separately, in order of decreasing predominance on the package. (21 CFR 201.66(c)(8) and (d)). Retinol is listed very low on the list of ingredients for each product. Specifically, it is listed 33rd in the Retinol Correxion Hand Repair, 29th in the Retinol Correxion Deep Wrinkle Serum, and 20th in the Retinol Correxion Daily Moisturizer. Retinol is never listed higher than 13th on the ingredient list of any of the RoC Products.

EXHIBIT 1 PAGE 34

William C. Weldon
Johnson & Johnson
June 11, 2009
Page - 7 -

Again, we do not have evidence of the exact percentage of retinol in each of these products. However, the placement of retinol far down on the list of ingredients of each product indicates that the retinol is found in very minimal concentration. This is troubling, considering the fact that the retinol has already been destabilized by the presence of various AHAs.

### E.    The RoC Products are Misbranded and the Claims About Them Are Not Substantiated

Through its uniform label and advertising claims, the RoC Products promise consumers that they can reduce wrinkles and take years off the look of one's skin. For example:

- The homepage of RoC Skin Care's website states, in prominent writing: "THE PROMISE: 10 Years Back," and then on the same page, in capitol letters states "RoC WE KEEP OUR PROMISES."

- On the RoC Skin Care website, under the "Products" section, RoC claims that the RoC Retinol Correxion Deep Wrinkle Serum "stimulates your skin's renewal process and is clinically proven to visibly reduce both fine lines and deep wrinkles."

- On the RoC Skin Care website, under the "Products" section, RoC claims that the RoC Retinol Correxion Deep Wrinkle Night Cream is "the only moisturizer *clinically proven to give 10 years back to the look of your skin.*

- Further, the website states "the formula contains a combination of RoC Retinol and a mineral complex of magnesium, zinc, and copper that has been optimized to improve the appearance of even deep wrinkles. RoC Retinol Correxion Deep Wrinkle Night Cream is formulated to work throughthe night when your skin is most receptive. As you apply, the upper layers of your skin are firmed, leading to a visible reduction in expression lines. Then, through the night, the formula works to smooth even your deep wrinkles."

- The RoC website also boasts of the "ANTI-AGING POWER OF RoC RETINOL," stating "as time passes... your skin's ability to renew itself gradually slows down. Skin loses its elasticity and wrinkles become more evident. *RoC RETINOL diminishes these signs of aging* to complement your skin's renewal process."

EXHIBIT 1 PAGE 35

William C. Weldon
Johnson & Johnson
June 11, 2009
Page - 8 -

In light of the Consumer Reports Study and the Michigan study, as well as other concerns about the RoC Products in general, those claims are not substantiated and, as such, are false and misleading under California law. Indeed, the evidence conclusively shows that the RoC Products do not work "as advertised."

**F.**    **Demand for Relief**

Demand is hereby made that J&J agree, within 30 days of receipt of this Notice to do and complete the following:

1.  Changes to J&J's Advertising of the RoC Products

We, on behalf of the Plaintiff Class, demand that J&J change its advertising of the RoC Products as follows:

(a) remove the language "Up to 7x more effective than another leading brand" from all packaging, labeling and advertising of the RoC Products;

(b) remove all references, in J&J's advertising and on its packaging and labels, to assertions that the RoC Products will take "10 years" off the look of one's skin;

(c) remove all references, in J&J's advertising and on its packaging and labels, to assertions that the RoC Products are "clinically proven" to perform as advertised;

(d) remove all references to the reduction of deep wrinkles from all packaging, labeling and advertising of the RoC Products;

(e) remove all testimonial and/or "before and after" type representations in commercials and advertising;

(f) Immediately cease making any and all representations about the "anti-wrinkle" capabilities of the RoC Products.

2.  Recall of Misbranded Product

In addition, on behalf of Plaintiff and the Plaintiff Class, we request that J&J institute a recall program, to be approved and supervised by us, as counsel to Plaintiff and the Plaintiff Class, of all RoC Products that presently have packaging or labeling that makes any of the claims as described herein.

EXHIBIT 1  PAGE 36

William C. Weldon
Johnson & Johnson
June 11, 2009
Page - 9 -

3. Restitution to the Plaintiff Class

Finally, we ask that you offer the Plaintiff Class full restitution. Specifically, provide a consumer fund in an amount sufficient to provide each and every class member with a full refund for each and every RoC Product purchased during the Class Period.

Of course, this would be subject to our review, as class counsel, of appropriate financial information detailing all sales made to California consumers during the Class Period. We also request that J&J provide for all costs, reasonable attorneys' fees and claims administration costs.

If you wish to discuss the above, please do not hesitate to contact me at 310-396-9600. If we do not hear from you prior to the close of business on July 11, 2009 we will assume that J&J has no interest in attempting to resolve this matter and we will proceed accordingly. In the meantime, we have included a draft copy of the complaint that we will file in the event J&J does not resolve this matter.

Sincerely,

MILSTEIN, ADELMAN & KREGER, LLP

Jennifer Steinberg

cc:     Paul D. Stevens, Esq.

EXHIBIT 1  PAGE 37

JBS DRAFT #1
CONFIDENTIAL AND PRIVILEGED
ATTORNEY WORK PRODUCT

**MILSTEIN, ADELMAN & KREGER, LLP**
Wayne S. Kreger, State Bar No. 154759
wkreger@maklawyers.com
Paul Stevens, State Bar No. 207107
pstevens@maklawyers.com
Jennifer B. Steinberg, State Bar No. 255335
jsteinberg@maklawyers.com
2800 Donald Douglas Loop North
Santa Monica, California 90405
Telephone: (310) 396-9600
Fax: (310) 396-9635

Attorneys for Plaintiff,
Lisa Fremont

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| LISA FREMONT, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>JOHNSON & JOHNSON, a New Jersey Corporation, doing business as RoC Skin Care; JOHNSON & JOHNSON CONSUMER COMPANIES, INC., doing business as RoC Skin Care; and DOES 1 through 2000, inclusive,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION**<br><br>COMPLAINT<br><br>1. FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*<br>2. FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17500, *et seq.*<br>3. VIOLATION OF CALIFORNIA CIVIL CODE § 1750, *et seq.* (Consumer Legal Remedies Act)<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Lisa Fremont ("Plaintiff"), individually and on behalf of all other similarly situated

purchasers of products from the RoC Skin Care line (the "Class"), bring this complaint against

JOHNSON & JOHNSON, a New Jersey Corporation, doing business as RoC Skincare, JOHNSON

& JOHNSON CONSUMER COMPANIES, INC., a New Jersey Corporation, (referred to herein as

1

**CLASS ACTION COMPLAINT (DRAFT – ATTORNEY WORK PRODUCT)**

EXHIBIT 1  PAGE 38

"Defendants"), and Does 1 through 2000, inclusive (sometimes collectively referred to herein as "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1.      This is a class action for restitution and injunctive relief against Defendants for unfair business practices and false and misleading advertising in violation of Business & Professions Code Section 17200, *et seq.*, Business & Professions Code Section 17500, *et seq.* and Civil Code Section 1750, *et seq.*  The advertising at issue involves specifically Defendants' "Anti-Wrinkle" skin care product line. RoC's "Anti-Wrinkle" skin care line includes the products: Retinol Correxion Deep Wrinkle Serum, Retinol Correxion Deep Wrinkle Night Cream, Retinol Correxion Deep Wrinkle Daily Moisturizer SPF 15, Retinol Correxion Eye Cream, Retinol Correxion Hand Repair SPF 15, Retinol Actif Rup Anti-Wrinkle Moisturizing Treatment Night, and Retinol Actif Rup Anti-Winkle Moisturizing Treatment Day SPF 15 (sometimes collectively referred to herein as the "Products").

2.      Defendants' advertising – television, print and some packaging – conveys a single, consistent false and misleading message to consumers: that the Products can visibly reduce wrinkles and can take ten years off of the look of one's skin.  Some of the more infamous, specific claims include:

A.      "Give[s] 10 years back to the look of your skin"

B.      "Visibly reduces fine lines and wrinkles"

C.      "Visibly reduces even deep wrinkles"

D.      "Give us 12 weeks, get back 10 years" and,

E.      "Has been scientifically shown to work within the skin's surface layers to reduce the visible signs of aging."

F.      "Visibly reduces age spots."

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

2

CLASS ACTION COMPLAINT (DRAFT – ATTORNEY WORK PRODUCT)

EXHIBIT 1  PAGE 39

3.     Those claims (as well as many others) about the Products are false and misleading. Defendants do not possess the requisite evidence to substantiate the claims about the Products. As such, Defendants have violated Business & Professions Code Section 17200, *et seq.*, Business & Professions Code Section 17500, *et seq.* and Civil Code Section 1750, *et seq.*

4.     During the course of this deception, Defendants have sold millions of units of the Products based upon the false promises and misleading advertisements.

5.     Plaintiff would not have purchased the Products had Defendant not made false representations about the Products. Plaintiff paid a premium for the Products because of the belief that they had qualities or characteristics that they did not in fact have. Plaintiff paid this premium because of the false representations of Defendants. Henceforth, Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendants' false representations.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over all causes of action asserted herein pursuant to the California Constitution, Article VI, § 10, because this case is a cause not given by statute to other trial courts. Plaintiff has standing to bring this action pursuant to Business & Professions Code § 17200, *et seq.*

7.     Venue is proper in this Court because Plaintiff resides in Los Angeles County and purchased the Products in Los Angeles County. Defendant receives substantial compensation from sales in Los Angeles County, and Defendant made numerous misrepresentations which had a substantial effect in Los Angeles County, including, but not limited to, television, magazine, newspaper and internet advertisements.

8.     Defendant and other out-of-state participants can be brought before this Court pursuant to the provisions of Code of Civil Procedure § 395.5.

///

///

///

///

3

CLASS ACTION COMPLAINT (DRAFT – ATTORNEY WORK PRODUCT)

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

EXHIBIT 1  PAGE 40

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

**PARTIES**

9.        Plaintiff is, and at all times relevant hereto was, an individual residing in Los Angeles County, California.  Plaintiff purchased the Products in Los Angeles County.  In doing so, Plaintiff relied upon advertising and other promotional material which were prepared and approved by Defendant and its agents and disseminated through national advertising media, containing the misrepresentations alleged herein and designed to encourage those seeking assistance in changing the appearance of their skin to purchase the Products.  Plaintiff did not notice a visible decrease in wrinkles and does not believe that she looks any younger after using the Products.

10.        Defendant Johnson & Johnson is a corporation organized under the laws of the State of New Jersey.  Johnson & Johnson is the world's second largest and most broadly based manufacturer of health care products.   The company holds a significant share of the consumer and pharmaceutical markets, and is the world's largest developer and manufacturer of medical treatment and diagnostic devices. Johnson & Johnson is a multinational corporation with approximately 119,200 employees worldwide, working in more than 250 operating companies in 57 countries.  According to its most recent annual filing with the United State Securities and Exchange Commission, Johnson & Johnson had approximately $63.75 billion in sales in 2008.  The corporation maintains its principal business office at One Johnson and Johnson Plaza, New Brunswick, NJ 08933.  Johnson & Johnson, directly and through its agents, has substantial contacts with and receives benefits and income from and through the State of California.  Johnson & Johnson is the owner, manufacturer and distributor of the Products, and is the company that created and/or authorized the false, misleading and deceptive advertisements and/or packaging for the Products.

11.        Defendant Johnson & Johnson Consumer Companies, Inc. is a corporation organized under the laws of the State of New Jersey.  Johnson & Johnson Consumer Companies, Inc. is a subsidiary of Johnson & Johnson.

12.        The true names and capacities, whether individual, corporate, associate or otherwise of certain manufacturers, distributors and/or their alter egos sued herein as DOES 1 through 100

4

CLASS ACTION COMPLAINT (DRAFT – ATTORNEY WORK PRODUCT)

EXHIBIT 1  PAGE 41

1   inclusive are presently unknown to Plaintiff who therefore sues these Defendants by fictitious
2   names. Plaintiff will seek leave of this Court to amend the Complaint to show their true names
3   and capacities when the same have been ascertained. Plaintiff is informed and believes and based
4   thereon alleges that DOES 1 through 100 were authorized to do and did business in Los Angeles
5   County. Plaintiff is further informed and believes and based thereon alleges that DOES 1 through
6   100 were and/or are, in some manner or way, responsible for and liable to Plaintiff for the events,
7   happenings, and damages hereinafter set forth below.

8       13.   The true names and capacities, whether individual, corporate, associate or otherwise
9   of certain vendors and/or their alter egos sued herein as DOES 101 through 1000 inclusive are
10   presently unknown to Plaintiff who therefore sues these Defendants by fictitious names. Plaintiff
11   will seek leave of this Court to amend the Complaint to show their true names and capacities
12   when the same have been ascertained. Plaintiff is informed and believes and based thereon
13   alleges that DOES 101 through 1000 were authorized to do and did business in Los Angeles
14   County. Plaintiff is further informed and believes and based thereon alleges that DOES 101
15   through 1000 were and/or are, in some manner or way, responsible for and liable to Plaintiff for
16   the events, happenings, and damages hereinafter set forth below.

17       14.   The true names and capacities, whether individual, corporate, associate, or otherwise
18   of the Defendants named herein as DOES 1001 through 2000 inclusive are presently unknown to
19   Plaintiff who therefore sue these Defendants by fictitious names. Plaintiff will seek leave of this
20   Court to amend this Complaint to show their true names and capacities when the same have been
21   ascertained. Plaintiff is informed and believes and based thereon alleges that DOES 1001 through
22   2000 were authorized to do and did business in Los Angeles County. Plaintiff is further informed
23   and believes and based thereon alleges that Does 1001 through 2000 were and/or are, in some
24   manner or way, responsible for and liable to Plaintiff for the events, happenings, and damages
25   hereinafter set forth below.

26       15.   Plaintiff is informed and believes and based thereon alleges that at all times relevant
27   herein each of the Defendants was the agent, servant, employee, subsidiary, affiliate, partner,
28

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

5

CLASS ACTION COMPLAINT (DRAFT – ATTORNEY WORK PRODUCT)

EXHIBIT 1  PAGE 42

assignee, successor-in-interest, alter ego or other representative of each of the remaining Defendants and was acting in such capacity in doing the things herein complained of and alleged.

16.   In committing the wrongful acts alleged herein, Defendants planned and participated in and furthered a common scheme by means of false, misleading, deceptive and fraudulent representations to induce members of the public to purchase the Products.   Defendants participated in the making of such representations in that each did disseminate or cause to be disseminated said misrepresentations.

17.   Defendants, upon becoming involved with the manufacture, advertising, and sale of the Products, knew or should have known that the claims about the Products and, in particular, the claims suggesting and/or outright stating that the Products could, in any way, cause a person to look 10 years younger or visibly reduce even deep wrinkles, were false, deceptive and misleading. Defendants affirmatively misrepresented the "benefits" of the Products in order to convince the public and the Products users to purchase and use the Products, resulting in profits of millions of dollars to Defendants, all to the damage and detriment of the consuming public.   Thus, in addition to the wrongful conduct herein alleged as giving rise to primary liability, Defendants further aided and abetted and knowingly assisted each other in breach of their respective duties and obligations as herein alleged.

## CLASS ACTION ALLEGATIONS

18.   Plaintiff brings this action on her own behalf and on behalf of all other persons similarly situated.   The Classes which Plaintiff seek to represent comprises: All persons residing in the State of California who purchased RoC's "Anti-Wrinkle" line of Products, specifically for personal use and not for resale during the time period June, 2005 through the present.   RoC's "Anti-Wrinkle" line includes the following products: Retinol Correxion Deep Wrinkle Serum, Retinol Correxion Deep Wrinkle Night Cream, Retinol Correxion Deep Wrinkle Daily Moisturizer SPF 15, Retinol Correxion Eye Cream, Retinol Correxion Hand Repair SPF 15, Retinol Actif Rup Anti-Wrinkle Moisturizing Treatment Night, and Retinol Actif Rup Anti-Wrinkle Moisturizing Treatment Day SPF 15. Excluded from the Class are Defendants' officers,

6

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

EXHIBIT 1  PAGE 43

1   directors, and employees, and any individual who received remuneration from Johnson & Johnson

2   in connection with that individual's use or endorsement of the RoC "Anti-Wrinkle" Products.

3       19.    The Class comprises many thousands of persons throughout California, the joinder

4   of whom is impracticable, and the disposition of their claims in a Class Action will benefit the

5   parties and the Court.   The Class is sufficiently numerous because millions of units of the

6   Products have been sold in the State of California during the Class Period.

7       20.    There is a well-defined community of interest in the questions of law and fact

8   involved affecting the parties to be represented.  The questions of law and fact common to the

9   Class predominate over questions which may affect individual Class members.    Common

10  questions of law and fact include, but are not limited to, the following:

> a.  Whether Defendants' conduct is an unlawful business act or practice within the
>     meaning of Business and Professions Code section 17200, *et seq.*;
>
> b.  Whether Defendants' conduct is a fraudulent business act or practice within the
>     meaning of Business and Professions Code section 17200, *et seq.*;
>
> c.  Whether Defendants' advertising is untrue or misleading within the meaning of
>     Business and Professions Code section 17500, *et seq.*;
>
> d.  Whether Defendants made false and misleading representations in their advertising
>     and packaging of the Products;
>
> e.  Whether Defendants knew or should have known that the representations were false;
>     and
>
> f.  Whether Defendants represented that the Products have characteristics, benefits, uses
>     or quantities which those products do not have.

23      21.    Plaintiff's claims are typical of the claims of the Class, and Plaintiff will fairly and

24  adequately represent and protect the interests of the Class.  Plaintiff has retained competent and

25  experienced counsel in class action and other complex litigation.

26      22.    Plaintiff would not have purchased the Products had Defendant not made false

27  representations about the Products.  Plaintiff paid a premium for the Products because of the belief

28  that they had qualities or characteristics that they did not in fact have.  Plaintiff paid this premium

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

7

**CLASS ACTION COMPLAINT (DRAFT   ATTORNEY WORK PRODUCT)**

EXHIBIT 1  PAGE 44

because of the false representations of Defendants.  Henceforth, Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendants' false representations.

23.     A class action is superior to other available methods for fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for Class members to prosecute their claims individually.

24.     The trial and litigation of Plaintiff's claims are manageable.  Individual litigation of the legal and factual issues raised by Defendants' conduct would increase delay and expense to all parties and the court system.  The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

25.     Defendants have acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole.  The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the Defendants.

26.     Absent a class action, Defendants will likely retain the benefits of their wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could not afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class members will continue to suffer losses and Defendants will be allowed to continue these violations of law and to retain the proceeds of their ill-gotten gains.

## FACTUAL BACKGROUND

### The Anti-Aging Cream Industry

27.     With the increased popularity and availability of cosmetic surgery in the 20th Century, the United States' consumers have focused on ways to maintain their youthful appearance for as long as possible.

28.     This focus has spanned a number of industries targeting consumers looking to defy nature and reverse the effects of aging.

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

8

EXHIBIT 1  PAGE 45

29.     This epidemic has spawned a multi-billion dollar industry known as the "skin care" industry.  Sales of products which promise a change in the appearance of one's skin reached approximately $8.9 billion in 2007.

30.     Anti-aging creams are included in this multibillion dollar skincare category.

31.     There are many different types of products which are marketed as having the ability to make a person look youthful.  Included amongst these products are those which focus on reducing age spots, those which claim to reduce the appearance of wrinkles, and those which claim to diminish the appearance of stretch marks and cellulite.  Many of the country's leading cosmetic companies, including Johnson & Johnson, have jumped on the anti-aging bandwagon, making bold and unsubstantiated claims about their products.

**Consumer Reports Study**

32.     In 2007 Consumer Reports conducted a study which tested various top-selling "anti-wrinkle" creams ("CR Study").  The objective of the study was to test the effectiveness of these products and to compare the results of each of the different products.

33.     The study was a 12-week study and included only women between the ages of 30 and 70 with light skin, which is the type most susceptible to developing fine lines and wrinkles. Included in the study was RoC's Retinol Correxion Deep Wrinkle product line.

34.     The creams were purchased in retail stores and all labels were covered so the women wouldn't know which brand they were using.  Most of the product lines consisted of a day cream and a night cream, which were applied every day at the appropriate time.  Each woman used a test product on one side of her face and the lab's standard moisturizer on the other for comparison. The women did not know which side of their face contained the test product.

35.     The test subjects' skin was examined at the beginning of the 12 week test, four weeks into it, and at the end, using various measures

36.     The CR study combined the overall results of all of the tests and grouped the products into three categories, namely, "slightly more effective," "average performance," and "slightly less effective."    The RoC Retinol Correxion Deep Wrinkle product line was in the lowest rated category, "slightly less effective."

9

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

EXHIBIT 1  PAGE 46

37.     Further, each product was rated in terms of the "moisturizing" effects, the "anti-wrinkle" effects, and the subjects' "tolerance" to the product. Each of these categories was rated either "excellent," "very good," "good," "fair," or "poor." RoC Retinol Correxion Deep Wrinkle product line's "anti-wrinkle" effectiveness was rated "fair," which was the lowest rating any of the products received in any category.

38.     Simply put, the CR study shows that while some topical creams may have the ability to reduce the appearance of fine lines in certain people, each individuals' skin will react differently to each product. Further, creams will not reduce the average depth of wrinkles by an amount that will be noticeable or substantial to the naked eye. Finally, the RoC Retinol Correxion Deep Wrinkle product line was found to be among the least effective of some of the best selling products on the market.

**The "Michigan" Study is unreliable**

39.     In 2007 the University of Michigan Medical School conducted a randomized, double-blind, vehicle-controlled study to assess the effectiveness of topical retinol in improving the clinical signs of naturally aged skin ("The Michigan Study").

40.     The study consisted of 36 elderly subjects, with a mean age of 87. By the end of the study 13 subjects had dropped out, resulting in an outcome based upon 26 participants. Each participant was treated with a 0.4% retinol lotion on one arm and its vehicle lotion on the opposite arm. The treatments were applied up to three times a week in mid-afternoons. The conclusion of the study was that topical retinol can improve fine wrinkles associated with natural aging.

41.     Many skin care companies have relied upon this study for the ability to make claims about the effectiveness of retinol as a wrinkle-reducing topical cream.

42.     The problems with this study are obvious and plentiful.

43.     First, the study size is small, consisting of only 23 people who completed the Michigan study. Studies of that size are scientifically deficient and inherently unreliable.

44.     Second, the drop out rate for the Michigan study was high – over 30%. In a study of this small size, such a high dropout rate renders the study's results questionable, at best.

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

10

EXHIBIT 1  PAGE 47

45.     Third, there was a lack of a control group.  With any study involving moisturizers or lotions for one's skin, there should be an untreated control group to account for anomalies such as weather which might affect the final results.  The Michigan study contained no such group, so it is impossible to see whether any outside causes may have contributed to the results of the test group.

46.     Fourth, the mean age of the participants in the Michigan study was 87.  In fact, the researchers targeted such a population by specifying that participants in the study must have been a minimum of 80 years old.   Clearly this is not the average population that J&J is attempting to reach with the advertising campaign of the RoC Products.

47.     Fifth, the Michigan study was a 24-week study, yet Defendants advertise their product has showing results over a 12-week period of time.  From a straight statistics perspective, the use of interim data is highly questionable.  When interim data is utilized for any purpose other than those associated with the study, a certain "correction" is typically applied to the interim data to ensure its accuracy.

48.     Finally, the retinol was only tested on participants' arms in the Michigan study.  The RoC Products are specifically made for use on the face (with the exception of one hand cream).  The skin on the arms is of a different elasticity than that of the face or the hands.  In order to be able to make the claims that J&J makes about the RoC Products, any study used must have tested the products on the same area of the body which the products are made for, namely the face and the hands

49.     Further, even if the Michigan study were reliable, Defendants' claims about the RoC Products are not substantiated by the Study.  The published conclusion of the Michigan study was that "topical retinol improves fine wrinkles associated with natural aging."  J&J's claims that the RoC Products can "visibly reduce even deep wrinkles" and can "take 10 years off the look of one's skin" are not authenticated by this conclusion.

///

///

///

///

11

CLASS ACTION COMPLAINT (DRAFT – ATTORNEY WORK PRODUCT)

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

EXHIBIT 1  PAGE 48

**The Combination of Ingredients in the RoC Products Make the "Anti-Wrinkle" Ingredient Ineffective**

50. The mixture of an alpha hydroxyl acid ("AHA") with retinol is an unstable combination. In fact, AHAs inactivate retinol and the two are not supposed to be used together. Each of the RoC Products (other than the three which contain sunscreen) contain retinol along with at least one AHA. With retinol being the only ingredient in the RoC Products with alleged "anti-wrinkle" capabilities, it is a problem that this ingredient

**The Dosage of Retinol in the RoC Products is too Low to be Effective**

51. The Michigan Study was based upon a cream with a 0.4% concentration of retinol. The concentration of retinol in the RoC Products has not been published, but the concentration appears to be very low. Ingredients in cosmetic products must appear separately, in order of decreasing predominance on the package. Retinol is listed very low on the list of ingredients for each product. Specifically, it is listed 33rd in the Retinol Correxion Hand Repair, 29th in the Retinol Correxion Deep Wrinkle Serum, and 20th in the Retinol Correxion Daily Moisturizer. Retinol is never listed higher than 13th on the ingredient list of any of the RoC Products.

52. The placement of retinol far down on the list of ingredients of each product indicates that the retinol is found in very minimal concentration.

**Johnson & Johnson's Deceptive Marketing of the Products**

53. Johnson & Johnson markets and advertises the Products in a false and deceptive manner. Johnson & Johnson does so through a uniform and consistent message that the Products can change the appearance of one's skin and can cause consumers to look a certain number of years younger, within a specified period of time. Johnson & Johnson disseminates this message through a broad range of media, including (without limitation) television commercials, print advertisements, packaging, point-of-purchase displays, and the like.

54. Examples of Johnson & Johnson's false and misleading advertising are set forth below.

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

The RoC Skin Care Website

55.     RoC's website is filled with various claims about its' products.

56.     On the home page of the website, in large font, it states "THE PROMISE: 10 Years Back"

57.     Immediately beneath this "promise," it states: "THE PROOF: Up to 7x more effective than another leading brand in visibly diminishing signs of aging"

58.     The home page contains a link for those who want to "learn more about the RoC Retinol Correxion Night Cream clinical study."

59.     When consumers click on this link to learn more about the "clinical study," they are taken to a page which contains the "results" of a "clinical study" done on RoC's Retinol Correxion Night Cream v. "another leading brand." The website fails to mention which brand RoC's product was tested against or who conducted this study.

60.     This page makes the following claims:

    a.  "In just 8 weeks of independent clinical testing, RoC RETINOL CORREXION Deep Wrinkle Night Cream was significantly more effective at reducing wrinkles than an anti-aging treatment from another leading brand."

    b.  RoC's RETINOL CORREXION Deep Wrinkle Night Cream improved the appearance of eye wrinkles by approximately 18%, which was supposedly four times greater than the results for the "other leading brand."

    c.  RoC's RETINOL CORREXION Night Cream improved the appearance of forehead wrinkles by approximately 19% which was supposedly four times greater than the results for the "other leading brand."

    d.  RoC's RETINOL CORREXION Deep Wrinkle Night Cream improved the appearance of crow's feet by approximately 21% which was supposedly seven times greater than the results for the "other leading brand."

    e.  In the RETINOL CORREXION Deep Wrinkle Night Cream clinical study, 71% of the RoC subjects showed improvement in the appearance of forehead wrinkles,

EXHIBIT 1  PAGE 50

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

1    which was supposedly four times greater than the results of the "other leading

2    brand."

3        f.  In the RETINOL CORREXION Deep Wrinkle Night Cream clinical study, 71% of

4    the RoC subjects showed improvement in the appearance of crow's feet, which was

5    supposedly eleven times greater than the results of the "other leading brand."

6        g.  In the RETINOL CORREXION Deep Wrinkle Night Cream clinical study, 71% of

7    the RoC subjects showed improvement in the appearance of under-eye wrinkles,

8    which was supposedly four times greater than the results of the "other leading

9    brand."

10       h.  In the RETINOL CORREXION Deep Wrinkle Night Cream clinical study, 93% of

11    the RoC subjects showed improvement in the appearance of overall photodamage.

12    61.     In addition, the RoC website makes certain additional claims about each of the

13  products within the "Anti-Wrinkle" skin care line. Such claims include, but are not limited to, the

14  following:

15    &bull;   "Give 10 years back to the look of your skin"

16    &bull;   "Visibly reduces even deep wrinkles."

17    &bull;   "Visibly reduces fine lines and wrinkles"

18    &bull;   "RETINOL CORREXION Deep Wrinkle Night Cream [is the] only moisturizer

19    clinically proven to give 10 years back to the look of your skin. This exclusive

20    combination ... is clinically proven to visibly reduce wrinkles while you sleep."

21    &bull;   "RoC RETINOL CORREXION Deep Wrinkle Serum stimulates your skin's

22    renewal process and is clinically proven to visibly reduce both fine lines and deep

23    wrinkles

24    &bull;   "RoC RETINOL CORREXION Eye Cream [is] specially formulated for the delicate

25    eye area [and] visibly reduces wrinkles around the eyes and crow's feet in 12 weeks.

26    In addition, it evens out dark circles and reduces puffiness in 4 weeks."

27

28

<div align="center">14</div>

<div align="center">**CLASS ACTION COMPLAINT (DRAFT – ATTORNEY WORK PRODUCT)**</div>

EXHIBIT 1  PAGE 51

- "When used daily, RoC RETINOL CORREXION Hand Repair SPF 15 fortifies the outer layer of the skin and is clinically shown to even out the look of discolorations and age spots for more youthful looking hands."

The RoC Packaging

62.     Certain packaging for the Products prominently displays certain "promises" or "benefits" on the front.

63.     The claims on their packaging include, but are not limited to the following:

- "Visibly reduces deep wrinkles"
- "Helps prevent the signs of aging"
- "Visibly reduces expression lines and deep wrinkles"
- "Visibly lifts eyelids"
- "Firms skin around eye"
- Reduces puffiness"
- "Visibly lifts and firms in one week"
- "Defines facial contours"

64.     The impression conveyed by those bold claims is that the Products can cause consumers to take years off the appearance of their skin.

65.     Through its false and deceptive claims, Johnson & Johnson has been successful in duping consumers into purchasing the Products, in the process making millions of dollars for Johnson & Johnson.

66.     Defendants' claims are unsubstantiated by their studies, their test results are not derived by the scientific method, and their work product fails to amounts to good science.

67.     Plaintiff paid a premium for the Products because of the belief that they had qualities or characteristics that they did not in fact have.  Plaintiff paid this premium because of the false representations of Defendants.  Henceforth, Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendants' false representations.

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

EXHIBIT 1  PAGE 52

### FIRST CAUSE OF ACTION

### <u>FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS &</u>

### <u>PROFESSIONS CODE § 17200, *et seq.*</u>

#### (By Plaintiff against all Defendants)

68.     Plaintiff repeats and realleges the allegations set forth above, and incorporates the same as if set forth herein at length.

69.     This cause of action is brought pursuant to <u>Business and Professions Code</u> § 17200, *et seq.*, on behalf of a Class consisting of all persons who purchased the Products in the State of California for personal use and not for resale during the time period June, 2005 through the present.  Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Johnson & Johnson in connection with that individual's use or endorsement of the Products.

70.     In the advertising of the Products, Johnson & Johnson makes false and misleading statements regarding the benefits and the efficacy of the Products, particularly as it applies to changing the appearance of one's skin, all as set forth above.

71.     Johnson & Johnson does not have the requisite competent and reliable scientific evidence to support the claims about the Products made in Defendants' advertising.

72.     Johnson & Johnson is aware that the claims that it makes about the Products are false, misleading and unsubstantiated.

73.     As alleged in the preceding paragraphs, the misrepresentations by Johnson & Johnson of the material facts detailed above constitutes an unfair and fraudulent business practice within the meaning of California <u>Business & Professions Code</u> § 17200.

74.     In addition, Johnson & Johnson's use of various forms of advertising media to advertise, call attention to or give publicity to the sale of goods or merchandise which are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of <u>Business & Professions Code</u> §§ 17531 and 17200, which advertisements have deceived and are likely to deceive the consuming public, in violation of <u>Business & Professions Code</u> § 17500.

16

**CLASS ACTION COMPLAINT (DRAFT – ATTORNEY WORK PRODUCT)**

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

EXHIBIT 1  PAGE 53

75.     There were reasonably available alternatives to further Johnson & Johnson's legitimate business interests, other than the conduct described herein.

76.     All of the conduct alleged herein occurs and continues to occur in Johnson & Johnson's business.   Johnson & Johnson's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

77.     Pursuant to Business & Professions Code §§ 17203 and 17535, Plaintiff and the members of the Class seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of advertising the sale and use of the Products.  Likewise, Plaintiff and the members of the Class seek an order requiring Defendants to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to disclose the existence and significance of said misrepresentations.

78.     Plaintiff would not have purchased the Products had Defendant not made false representations about the Products.  Plaintiff paid a premium for the Products because of the belief that they had qualities or characteristics that they did not in fact have.  Plaintiff paid this premium because of the false representations of Defendants.  Henceforth, Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendants' false representations.

## SECOND CAUSE OF ACTION

## FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, *et seq.*

### (By Plaintiff against all Defendants)

79.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

80.     This cause of action is brought pursuant to Business and Professions Code § 17200, *et seq.*, on behalf of a Class consisting of all persons who purchased the Products in the State of California for personal use and not for resale during the time period June, 2005 through the present.  Excluded from the Class are Defendants' officers, directors, and employees, and any

17

CLASS ACTION COMPLAINT (DRAFT – ATTORNEY WORK PRODUCT)

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

EXHIBIT 1  PAGE 54

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

1 individual who received remuneration from Johnson & Johnson in connection with that

2 individual's use or endorsement of the Products.

3     81.    In their advertising of the Products, Defendants make false and misleading

4 statements regarding the benefits and the efficacy of the Products, particularly as it applies to

5 changing the appearance of one's skin, all as set forth above.

6     82.    Defendants do not have any competent and reliable scientific evidence to support the

7 claims about the Products made in Defendants' advertising.

8     83.    Defendants are aware that the claims that they make about the Products are false,

9 misleading and unsubstantiated.

10     84.    As alleged in the preceding paragraphs, the misrepresentations by Defendants of the

11 material facts detailed above constitutes an unfair and fraudulent business practice within the

12 meaning of California Business & Professions Code § 17200.

13     85.    In addition, Defendants' use of various forms of advertising media to advertise, call

14 attention to or give publicity to the sale of goods or merchandise which are not as represented in

15 any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising,

16 and an unlawful business practice within the meaning of Business & Professions Code §§ 17531

17 and 17200, which advertisements have deceived and are likely to deceive the consuming public,

18 in violation of Business & Professions Code § 17500.

19     86.    Pursuant to Business & Professions Code §§ 17203 and 17535, Plaintiff and the

20 members of the Class seek an order of this Court enjoining Defendants from continuing to

21 engage, use, or employ their practice of advertising the sale and use of the Products. Likewise,

22 Plaintiff and the members of the Class seek an order requiring Defendants to disclose such

23 misrepresentations, and additionally request an order awarding Plaintiff restitution of the money

24 wrongfully acquired by Defendants by means of responsibility attached to Defendants' failure to

25 disclose the existence and significance of said misrepresentations.

26     87.    Plaintiff would not have purchased the Products had Defendant not made false

27 representations about the Products. Plaintiff paid a premium for the Products because of the belief

28 that they had qualities or characteristics that they did not in fact have. Plaintiff paid this premium

18

CLASS ACTION COMPLAINT (DRAFT – ATTORNEY WORK PRODUCT)

EXHIBIT 1  PAGE 55

1   because of the false representations of Defendants.  Henceforth, Plaintiff and the Class have

2   suffered injury in fact and have lost money as a result of Defendants' false representations.

3

4                        **THIRD CAUSE OF ACTION**

5          **VIOLATION OF CALIFORNIA CIVIL CODE § 1750, _et seq._**

6               **(By Plaintiff against all Defendants)**

7       88.    Plaintiff repeats and realleges the all allegations of the previous paragraphs, and

8   incorporates the same as if set forth herein at length.

9       89.    This cause of action is brought pursuant to Civil Code § 1750, _et seq._, the

10   Consumers Legal Remedies Act, on behalf of a Class consisting of all persons who purchased the

11   Products in the State of California for personal use and not for resale during the time period June

12   2005 through the present.  Excluded from the Class are Defendants' officers, directors, and

13   employees, and any individual who received remuneration from Johnson & Johnson in connection

14   with that individual's use or endorsement of the Products.

15       90.    The Consumer Class consists of thousands of persons, the joinder of whom is

16   impracticable.

17       91.    There are questions of law and fact common to the class, which questions are

18   substantially similar and predominate over questions affecting the individual members, including

19   but not limited to: (a) Whether Defendants represented that the Products have characteristics,

20   benefits, uses or quantities which they do not have; (b) Whether the existence, extent and

21   significance of the major misrepresentations regarding the purported benefits, characteristics and

22   efficacy of the Products violate the Act; and (c) Whether Defendants knew of the existence of

23   these misrepresentations.

24       92.    The policies, acts, and practices heretofore described were intended to result in the

25   sale of the Products to the consuming public, particularly those seeking a more youthful

26   appearance, and violated and continue to violate § 1770(a)(5) of the Act by representing that the

27   Products have characteristics, benefits, uses or quantities which they do not have.

28

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

93.     Defendants fraudulently deceived Plaintiff and the Class by representing that the Products have certain characteristics, benefits, uses and qualities which they do not have (i.e., they can make consumers look years younger).   In doing so, Defendants intentionally misrepresented and concealed material facts from Plaintiff and the Class.  Said misrepresentation and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

94.     Defendants knew that the Products did not cause and/or assist consumers with achieving a more youthful appearance as represented in Defendants' advertisements and on Defendants' packaging.

95.     Defendants' actions as described hereinabove were done with conscious disregard of Plaintiff's rights and Defendants were wanton and malicious in their concealment of the same.

96.     Plaintiff would not have purchased the Products had Defendant not made false representations about the Products.  Plaintiff paid a premium for the Products because of the belief that they had qualities or characteristics that they did not in fact have.  Plaintiff paid this premium because of the false representations of Defendants.  Henceforth, Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendants' false representations.

97.     Pursuant to § 1780(a) of the Act, Plaintiff seeks injunctive relief only, in the form of an order enjoining the above-described wrongful acts and practices of Defendants, including, but not limited to, an order enjoining Defendants from distributing such false advertising and misrepresentations.  Plaintiff shall be irreparably harmed if such an order is not granted.

98.     In accordance with Civil Code § 1782(a) & (d), Plaintiff will subsequently amend this class action Complaint without leave of Court to include a request for damages.  Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore any person in interest any money which may have been acquired by means of such unfair business practices, and for such relief as provided in Civil Code § 1780 and the Prayer For Relief.

///

///

///

CLASS ACTION COMPLAINT (DRAFT – ATTORNEY WORK PRODUCT)

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

EXHIBIT 1  PAGE 57

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the members of the Class defined herein, prays for judgment and relief on all Causes of Action as follows:

A.    An order certifying that the action may be maintained as a Class Action;

B.    An order enjoining Defendants from pursuing the policies, acts, and practices complained of herein;

C.    An order requiring Defendants to pay restitution to Plaintiff and all members of the Classes under the First and Second Causes of action;

D.    Actual damages;

E.    Punitive damages;

F.    For pre-judgment interest from the date of filing this suit;

G.    Reasonable attorneys' fees;

H.    Costs of this suit; and

I.    Such other and further relief as the Court may deem necessary or appropriate.

DATED: June 11, 2009

MILSTEIN, ADELMAN & KREGER, LLP

By: _____
Wayne S. Kreger
Jennifer Steinberg
Attorneys for Plaintiff, Lisa Fremont

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

21

CLASS ACTION COMPLAINT (DRAFT – ATTORNEY WORK PRODUCT)

EXHIBIT 1  PAGE 58

1

**JURY TRIAL DEMANDED**

2

Plaintiff demands a jury trial on all triable issues.

3

DATED: June 11, 2009

MILSTEIN, ADELMAN & KREGER, LLP

4

5

By: 

6

Wayne S. Kreger
Jennifer Steinberg
Attorneys for Plaintiff, Lisa Fremont

7

8

9

10

Milstein, Adelman & Kreger, LLP
2600 Donald Douglas Loop North
Santa Monica, California 90405

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22

CLASS ACTION COMPLAINT (DRAFT – ATTORNEY WORK PRODUCT)

EXHIBIT 1  PAGE 59

1  MILSTEIN, ADELMAN & KREGER, LLP
   Wayne S. Kreger, State Bar No. 154759
2  wkreger@maklawyers.com
   Paul D. Stevens, State Bar No. 207107
3  pstevens@maklawyers.com
   Jennifer B. Steinberg, State Bar No. 255335
4  jsteinberg@maklawyers.com
   2800 Donald Douglas Loop North
5  Santa Monica, California 90405
   Telephone: (310) 396-9600
6  Fax: (310) 396-9635

7  Attorneys for Plaintiff,
   Lisa Fremont
8

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 16 2009

John A. Clarke, Executive Officer/Clerk
By_____, Deputy
SHAUNYA WESLEY

9            SUPERIOR COURT FOR THE STATE OF CALIFORNIA

10              FOR THE COUNTY OF LOS ANGELES

11  LISA FREMONT, individually and on behalf of          Case No. _____  BC417969
    all others similarly situated,
12                                                        CLASS ACTION
                 Plaintiff,
13                                                        DECLARATION OF WAYNE S. KREGER,
          vs.                                             ESQ. RE: VENUE PURSUANT TO CAL.
14                                                        CIV. CODE §1780(c)
    JOHNSON & JOHNSON, a New Jersey
15  Corporation, doing business as RoC Skin Care;
    JOHNSON & JOHNSON CONSUMER
16  COMPANIES, INC., doing business as RoC               Dept:
    Skin Care; and DOES 1 through 2000, inclusive,
17                                                        Complaint Filed: July 16, 2009
                 Defendants.
18

19

20

21

22

23

24

25

26

27

28

                                          1
              DECLARATION RE: VENUE, PURSUANT TO CIV. CODE §1780(c)

EXHIBIT 1  PAGE 60

**DECLARATION OF WAYNE S. KREGER**

I, Wayne S. Kreger, declare as follows:

I am an attorney in good standing, duly licensed to practice law in all courts in the State of California. I am a partner at Milstein, Adelman & Kreger, LLP, attorneys for Plaintiff Lisa Fremont, et al. ("Plaintiffs") in the above-entitled matter. I have personal knowledge of the matters stated herein, except as to those matters stated on information and belief, and as to those matters I believe them to be true. I am competent to testify and if called as a witness would and could testify competently to these matters.

1.      I declare that the complaint therein is being filed concurrently with the filing of this declaration in a proper place for the trial thereof, which is Los Angeles County.

2.      Plaintiffs in this matter reside and/or are employed in Los Angeles County.

3.      The transaction giving rise to this action, namely the purchase of the product at issue, occurred in Los Angeles County.

4.      Given the foregoing, the complaint being filed concurrently with this affidavit is being filed in the proper county.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: July 16, 2009                    MILSTEIN, ADELMAN, & KREGER

                                        By: Wayne S. Kreger

2
DECLARATION RE: VENUE, PURSUANT TO CIV. CODE §1780(c)

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

EXHIBIT 1 PAGE 61

CC

| SHORT TITLE: Fremont v. Johnson & Johnson, et al. | CASE NUMBER BC417969 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES  CLASS ACTION? ☑ YES  LIMITED CASE? ☐ YES  TIME ESTIMATED FOR TRIAL 20  ☐ HOURS/ ☑ DAYS

Item II. Select the correct district and courthouse location (4 steps -- If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (see Column C below) |
|---|

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | **A** Civil Case Cover Sheet Category No. | **B** Type of Action (Check only one) | **C** Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death -- Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | ☐ A7270 - Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☑ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | ①, 2., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |

| LACIV 109 (Rev. 01/07) LASC Approved 03-04 | CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION | LASC, rule 2.0 Page 1 of 4 |
|---|---|---|

EXHIBIT 1  PAGE 62

| SHORT TITLE: Fremont v. Johnson & Johnson, et. al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover<br>Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>-See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/<br>Wrongful Death Tort (Cont'd.)** | Professional<br>Negligence<br>(25) | ☐ A6017  Legal Malpractice<br>☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination<br>(36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment<br>(15) | ☐ A6024  Other Employment Complaint Case<br>☐ A6109  Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| **Contract** | Breach of Contract/<br>Warranty<br>(06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction)<br>☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019  Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| | Collections<br>(09) | ☐ A6002  Collections Case-Seller Plaintiff<br>☐ A6012  Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| | Insurance Coverage<br>(18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract<br>(37) | ☐ A6009  Contractual Fraud<br>☐ A6031  Tortious Interference<br>☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| **Real Property** | Eminent<br>Domain/Inverse<br>Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation        Number of parcels_____ | 2. |
| | Wrongful Eviction<br>(33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property<br>(26) | ☐ A6018  Mortgage Foreclosure<br>☐ A6032  Quiet Title<br>☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-<br>Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-<br>Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-<br>Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration<br>(11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 2 of 4

EXHIBIT 1  PAGE 63

| SHORT TITLE: Fremont v. Johnson & Johnson, et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review (Cont'd.)** | Writ of Mandate<br>(02) | ☐ A6151  Writ – Administrative Mandamus<br>☐ A6152  Writ – Mandamus on Limited Court Case Matter<br>☐ A6153  Writ – Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review<br>(39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade<br>Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☐ A6008  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental  (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement<br>of Judgment<br>(20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br>(42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation<br>Governance(21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

LACIV 109 (Rev. 01/07)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

LASC, rule 2.0
Page 3 of 4

EXHIBIT 1  PAGE 64

| SHORT TITLE: Fremont v. Johnson & Johnson, et al. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE | ADDRESS: 10422 Eastborne Ave. | |
|---|---|---|
| ☑1. ☐2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | | |
| CITY: Los Angeles | STATE: CA | ZIP CODE: 90024 | |

Item IV. *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk courthouse in the Central District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: July 16, 2009

(SIGNATURE OF ATTORNEY/FILING PARTY)

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LACIV 109 (Rev. 01/07), LASC Approved 03-04.

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

EXHIBIT 1  PAGE 65



CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Wayne Kreger, SBN 154759<br>MILSTEIN, ADELMAN & KREGER, LLP<br>2800 Donald Douglas Loop N<br>Santa Monica, CA 90405<br>TELEPHONE NO.: **310-396-9600**   FAX NO.: **310-396-9635**<br>ATTORNEY FOR *(Name):* **PLAINTIFF, Lisa Fremont** | **CONFORMED COPY**<br>**OF ORIGINAL FILED**<br>Los Angeles Superior Court<br>**JUL 16 2009**<br>John A. Clarke, Executive Officer/Clerk<br>By _____, Deputy<br>SHAUNYA WESLEY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: 111 N. Hill Street
CITY AND ZIP CODE: Los Angeles, 90012-3014
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
LISA FREMONT v. JOHNSON & JOHNSON, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: **BC417969** |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[✓] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [✓] is   [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [✓] Large number of separately represented parties
b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [✓] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [ ] punitive
4. Number of causes of action *(specify):*  3
5. This case [✓] is   [ ] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: July 16, 2009
Wayne S. Kreger, Esq.
_____   _____
(TYPE OR PRINT NAME)                        (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

*Page 1 of 2*

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |

EXHIBIT 1  PAGE 66

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the
case involves an uninsured
motorist claim subject to
arbitration, check this item
instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or
toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip
and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) *(not civil
harassment)* (08)
Defamation (e.g., slander, libel)
(13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer
or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage *(not provisionally
complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent
domain, landlord/tenant, or
foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
drugs, check this item; otherwise,
report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex
case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment *(non-
domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-
harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified
above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late
Claim
Other Civil Petition

**CIVIL CASE COVER SHEET**

EXHIBIT 1  PAGE 67

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE

Case Number _____

BC 41796

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT
Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 7.3(c)). There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM | |
|---|---|---|---|---|---|---|
| Hon. Elihu M. Berle | 1 | 534 | Hon. Holly E. Kendig | 42 | 416 | |
| Hon. J. Stephen Czuleger | 3 | 224 | Hon. Mel Red Recana | 45 | 529 | |
| Hon. Luis A. Lavin | 13 | 630 | Hon. Aurelio Munoz | 47 | 507 | |
| Hon. Terry A. Green | 14 | 300 | Hon. Elizabeth Allen White | 48 | 506 | |
| Hon. Richard Fruin | 15 | 307 | Hon. Conrad Aragon | 49 | 509 | |
| Hon. Rita Miller | 16 | 306 | Hon. John Shepard Wiley Jr. | 50 | 508 | |
| Hon. Richard E. Rico | 17 | 309 | Hon. Abraham Khan | 51 | 511 | |
| Hon. Helen I. Bendix | 18 | 308 | Hon. Susan Bryant-Deason | 52 | 510 | |
| Hon. Judith C. Chirlin | 19 | 311 | Hon. John P. Shook | 53 | 513 | |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. Ernest M. Hiroshige | 54 | 512 | |
| Hon. Zaven V. Sinanian | 23 | 315 | Hon. Malcolm H. Mackey | 55 | 515 | |
| Hon. Robert L. Hess | 24 | 314 | Hon. Jane L. Johnson | 56 | 514 | |
| Hon. Mary Ann Murphy | 25 | 317 | Hon. Ralph W. Dau | 57 | 517 | |
| Hon. James R. Dunn | 26 | 316 | Hon. Rolf M. Treu | 58 | 516 | |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. David L. Minning | 61 | 632 | |
| Hon. John A. Kronstadt | 30 | 400 | Hon. Michael L. Stern | 62 | 600 | |
| Hon. Alan S. Rosenfield | 31 | 407 | Hon. Kenneth R. Freeman | 64 | 601 | |
| Hon. Mary H. Strobel | 32 | 406 | Hon. Mark Mooney | 68 | 617 | |
| Hon. Charles F. Palmer | 33 | 409 | Hon. Edward A. Ferns | 69 | 621 | |
| Hon. Amy D. Hogue | 34 | 408 | Hon. Soussan G. Bruguera | 71 | 729 | |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Ruth Ann Kwan | 72 | 731 | |
| Hon. Joanne O'Donnell | 37 | 413 | Hon. Teresa Sanchez-Gordon | 74 | 735 | |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. William F. Fahey | 78 | 730 | |
| Hon. Michael C. Solner | 39 | 415 | Hon. Carl J. West* | 311 | CCW | |
| Pending Assignment | 40 | 414 | Other | | | |
| Hon. Ronald M. Sohigian | 41 | 417 | | | | |

**\*Class Actions**
All class actions are initially assigned to Judge Carl J. West in Department 311 of the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005).
This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the class action case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____      JOHN A. CLARKE, Executive Officer/Clerk
                                                                                                                    By _____, Deputy Clerk

LACIV CCH 190 (Rev. 04-09)                    **NOTICE OF CASE ASSIGNMENT –**                    Page 1 of 2
LASC Approved 05-06                              **UNLIMITED CIVIL CASE**

EXHIBIT 1  PAGE 68

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Seven Rules, as applicable in the Central District, are summarized for your assistance.

### APPLICATION

The Chapter Seven Rules were effective January 1, 1994. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Chapter Seven Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Seven Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Seven Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Seven Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

LACIV CCH 190 (Rev. 04-09)
LASC Approved 05-06

**NOTICE OF CASE ASSIGNMENT –
UNLIMITED CIVIL CASE**

Page 2 of 2

EXHIBIT 1  PAGE 69

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE
[CRC 3.221 Information about Alternative Dispute Resolution]
For additional ADR information and forms visit the Court ADR web application at www.lasuperiorcourt.org (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (Civil only).

**What is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

> **Cases for Which Mediation May Be Appropriate**
> Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

> **Cases for Which Mediation May Not Be Appropriate**
> Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

> **Cases for Which Arbitration May Be Appropriate**
> Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

> **Cases for Which Arbitration May Not Be Appropriate**
> If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

> **Cases for Which Neutral Evaluation May Be Appropriate**
> Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

> **Cases for Which Neutral Evaluation May Not Be Appropriate**
> Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

EXHIBIT 1  PAGE 70

# LOS ANGELES SUPERIOR COURT ADR PROGRAMS

CIVIL:

- **Civil Action Mediation** (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court, rules 3.850-3.868 and 3.870-3.878, Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12.)
- **Retired Judge Settlement Conference**
- **Neutral Evaluation** (Governed by Los Angeles Superior Court Rules, chapter 12.)
- **Judicial Arbitration** (Governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12.)
- **Eminent Domain Mediation** (Governed by Code of Civil Procedure section 1250.420.)
- **Civil Harassment Mediation**
- **Small Claims Mediation**

FAMILY LAW (non-custody):

- **Mediation**
- **Forensic Certified Public Accountant (CPA) Settlement Conference**
- **Settlement Conference**
- **Nonbinding Arbitration** (Governed by Family Code section 2554.)

PROBATE:

- **Mediation**
- **Settlement Conference**

## NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party Select Panel or may hire someone privately, at their discretion. If the parties utilize the Random Select Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

## COURT ADR PANELS

**Party Select Panel**
The Party Select Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing.

**Random Select Panel**
The Random Select Panel consists of trained mediators, neutral evaluators, and arbitrators who have not yet gained the experience to qualify for the Party Select Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the Court that all Random Select panel volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing.

**Private Neutral**
The market rate for private neutrals can range from $300-$1,000 per hour.

## ADR ASSISTANCE

For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.

| COURTHOUSE | ADDRESS | ROOM | CITY | PHONE | FAX |
|---|---|---|---|---|---|
| Antonovich | 42011 4th St. West | None | Lancaster, CA 93534 | (661)974-7275 | (661)974-7060 |
| Chatsworth | 9425 Penfield Ave. | 1200 | Chatsworth, CA 91311 | (818)576-8565 | (818)576-8687 |
| Compton | 200 W. Compton Blvd. | 1002 | Compton, CA 90220 | (310)603-3072 | (310)223-0337 |
| Glendale | 600 E. Broadway | 273 | Glendale, CA 91206 | (818)500-3160 | (818)548-5470 |
| Long Beach | 415 W. Ocean Blvd. | 316 | Long Beach, CA 90802 | (562)491-6272 | (562)437-3802 |
| Norwalk | 12720 Norwalk Blvd. | 308 | Norwalk, CA 90650 | (562)807-7243 | (562)462-9019 |
| Pasadena | 300 E. Walnut St. | 109 | Pasadena, CA 91101 | (626)356-5685 | (626)666-1774 |
| Pomona | 400 Civic Center Plaza | 106 | Pomona, CA 91766 | (909)620-3183 | (909)629-6283 |
| San Pedro | 505 S. Centre | 209 | San Pedro, CA 90731 | (310)519-6151 | (310)514-0314 |
| Santa Monica | 1725 Main St. | 203 | Santa Monica, CA 90401 | (310)260-1829 | (310)319-6130 |
| Stanley Mosk | 111 N. Hill St. | 113 | Los Angeles, CA 90012 | (213)974-5425 | (213)633-5115 |
| Torrance | 825 Maple Ave. | 100 | Torrance, CA 90503 | (310)222-1701 | (310)782-7326 |
| Van Nuys | 6230 Sylmar Ave. | 418 | Van Nuys, CA 91401 | (818)374-2337 | (818)902-2440 |

Partially Funded by the Los Angeles County Dispute Resolution Program
A complete list of the County Dispute Resolution Programs is available online and upon request in the Clerk's Office.

EXHIBIT 1  PAGE 71

1   **MILSTEIN, ADELMAN & KREGER, LLP**
    Wayne S. Kreger, State Bar No. 154759
2   wkreger@maklawyers.com
    Paul D. Stevens, State Bar No. 207107
3   pstevens@maklawyers.com
    Jennifer B. Steinberg, State Bar No. 255335
4   jsteinberg@maklawyers.com
    2800 Donald Douglas Loop North
5   Santa Monica, California 90405
    Telephone: (310) 396-9600
6   Fax: (310) 396-9635

7   Attorneys for Plaintiff,
    Lisa Fremont
8
                **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**
9
                    **FOR THE COUNTY OF LOS ANGELES**
10

11  LISA FREMONT, individually and on behalf of   | Case No.  BC 417969
    all others similarly situated,
12                                                 | CLASS ACTION
                    Plaintiff,
13
            vs.                                    | **NOTICE OF COURT ORDER ON NON-**
14                                                 | **COMPLEX DESIGNATION AND**
    JOHNSON & JOHNSON, a New Jersey                | **JUDICIAL ASSIGNMENT**
15  Corporation, doing business as RoC Skin Care;
    JOHNSON & JOHNSON CONSUMER
16  COMPANIES, INC., doing business as RoC
    Skin Care; and DOES 1 through 2000, inclusive,
17
                    Defendants.
18

19

20

21

22

23

24

25

26

27

28
                                    **1**
        NOTICE OF COURT ORDER ON NON-COMPLEX DESIGNATION AND JUDICIAL ASSIGNMENT

EXHIBIT 1  PAGE 72

1   PLEASE TAKE NOTICE THAT on August 4, 2009, the Honorable Carl J. West in

2   Department 311 of the above-referenced Court made its determination that the case Lisa Fremont v.

3   Johnson & Johnson, et al. (Case No. BC 417969) is designated non-complex and is reassigned to

4   Judge Richard E. Rico in Department 17 at Stanley Mosk Courthouse.

5       Attached hereto as Exhibit A is the Court's Entry of Order regarding the Non-Complex

6   Designation.

7

8

9

10  Dated: August 11, 2009                    MILSTEIN, ADELMAN, & KREGER, LLP

11

12

13  By:       Wayne S. Kreger
              Jennifer Steinberg
14            Attorneys for Plaintiff LISA
              FREMONT, on Behalf of
15            Herself and All Others Similarly
              Situated

16

17

18

19

20

21

22

23

24

25

26

27

28

**Milstein, Adelman &Kreger, LLP**
2800 Donald Douglas Loop North
Santa Monica, California 90405

2
NOTICE OF COURT ORDER ON NON-COMPLEX DESIGNATION AND JUDICIAL ASSIGNMENT

EXHIBIT 1  PAGE 73

# EXHIBIT A

EXHIBIT 1  PAGE 74

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 08/04/09 | | DEPT. 311 |
| HONORABLE CARL J. WEST | JUDGE | E. SABALBURO | DEPUTY CLERK |
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| NONE | Deputy Sheriff | NONE | Reporter |

| | | |
|---|---|---|
| 8:30 am | BC417969 | Plaintiff Counsel |
| | LISA FREMONT | NO APPEARANCES |
| | VS | Defendant |
| | JOHNSON & JOHNSON ET AL | Counsel |
| | NON-COMPLEX (08-04-09) | |

NATURE OF PROCEEDINGS:

I, the below named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am not
a party to the cause herein, and that this date I
served Notice of Entry of the above minute order of
08-06-09 upon each party or counsel named below by
depositing in the United States mail at the courthouse
in Los Angeles, California, one copy of the
original entered herein in a separate sealed envelope
for each, addressed as shown below with the postage
thereon fully prepaid.

Date: 08-06-09

John A. Clarke, Executive Officer/Clerk

By:    **KIN HILAIRE**
            K. HILAIRE

MILSTEIN, ADELMAN & KREGER, LLP
Wayne S. Kreger, Esq.
2800 Donald Douglas Loop North
Santa Monica, California  90405

Page    2 of    2    DEPT. 311

```
MINUTES ENTERED
08/04/09
COUNTY CLERK
```

EXHIBIT 1  PAGE 75

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 08/04/09 | | DEPT. 311 |
|---|---|---|
| HONORABLE CARL J. WEST   JUDGE | E. SABALBURO | DEPUTY CLERK |
| HONORABLE   JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| NONE   Deputy Sheriff | NONE | Reporter |

| | | |
|---|---|---|
| 8:30 am | BC417969 | Plaintiff<br>Counsel |
| | LISA FREMONT | NO APPEARANCES |
| | VS | Defendant |
| | JOHNSON & JOHNSON ET AL | Counsel |
| | | |
| | NON-COMPLEX (08-04-09) | |

**NATURE OF PROCEEDINGS:**

COURT ORDER

This Court makes its determination whether or not this
case should be deemed complex pursuant to Rule 3.400
of the California Rules of Court.

This case is designated non-complex and is reassigned
to Judge Richard E. Rico in Department 17 at
Stanley Mosk Courthouse for all further proceedings.

Court orders any complex case fee paid to be refunded.

Plaintiff is ordered to serve a copy of this minute
order on all parties forthwith and file a proof of
service in Department 17 within five (5) days of
service.

Any party objecting to the non-complex designation
must file an objection and proof of service in
Department 311 within ten (10) days of service of this
minute order. Any response to the objection must be
filed in Department 311 within seven (7) days of
service of the objection. This Court will make its
ruling on the submitted pleadings.

CLERK'S CERTIFICATE OF MAILING/
NOTICE OF ENTRY OF ORDER

Page   1 of   2   DEPT. 311

MINUTES ENTERED
08/04/09
COUNTY CLERK

EXHIBIT 1 PAGE 76

| 1 | PROOF OF SERVICE |
|---|---|
| 2 | STATE OF CALIFORNIA, COUNTY OF LOS ANGELES |

3

4      I am employed in the County of LOS ANGELES, State of CALIFORNIA.  I am over the age of 18 and not a party to within action; my business address is **2800 Donald Douglas Loop North, Santa Monica, CA 90405.**

5

6      On August 11, 2009, I served the foregoing documents described as:

7

8    *NOTICE OF COURT ORDER ON NON-COMPLEX DESIGNATION AND JUDICIAL ASSIGNMENT*

9

10    On interested parties in this action by sending a true copy of the document to the following parties as follows:

11

| 12 | Johnson & Johnson | Johnson & Johnson Consumer Companies, Inc. |
|---|---|---|
| 13 | Agent for Service of Process | Agent for Service of Process |
| 14 | Steven M. Rosenberg | CT Corporation |
|  | 1 Johnson & Johnson Plaza | 818 W. 7th St. |
| 15 | New Brunswick, NJ 08933 | Los Angeles, CA 90017 |

16   xxxx   (BY US MAIL) I caused such envelope(s) with postage thereon fully prepaid to be placed in

17  the United States mail at Santa Monica, California. I am readily familiar with this business' practice for collecting and processing correspondence for mailing.  On the same day that

18  correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

19

20  Executed on August 11, 2009 at Santa Monica, California

21

22   xxxx   (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

23   ------   (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at

24  whose direction the service was made.

25

26                       Jackie Moon

27

28  POS Rev (9-2008)

Page 1 of 1

EXHIBIT 1  PAGE 77



**MILSTEIN, ADELMAN & KREGER, LLP**
Wayne S. Kreger, State Bar No. 154759
wkreger@maklawyers.com
Paul D. Stevens, State Bar No. 207107
pstevens@maklawyers.com
Jennifer B. Steinberg, State Bar No. 255335
jsteinberg@maklawyers.com
2800 Donald Douglas Loop North
Santa Monica, California 90405
Telephone: (310) 396-9600
Fax: (310) 396-9635

Attorneys for Plaintiff,
Lisa Fremont

### SUPERIOR COURT FOR THE STATE OF CALIFORNIA

### FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| LISA FREMONT, individually and on behalf of all others similarly situated, | Case No.  BC 417969 |
| Plaintiff, | CLASS ACTION |
| vs. | NOTICE OF PROOF OF SERVICE OF SUMMONS |
| JOHNSON & JOHNSON, a New Jersey Corporation, doing business as RoC Skin Care; JOHNSON & JOHNSON CONSUMER COMPANIES, INC., doing business as RoC Skin Care; and DOES 1 through 2000, inclusive, | |
| Defendants. | |

*Milstein, Adelman & Kreger, LLP*
*2800 Donald Douglas Loop North*
*Santa Monica, California 90405*

1
NOTICE OF PROOF OF SERVICE OF SUMMONS

EXHIBIT 1  PAGE 78

1    Attached hereto is the proof of service on defendant JOHNSON & JOHNSON to Plaintiff's

2    Summons, Civil Case Cover Sheet, Civil Case Coversheet Addendum and Statement of Location,

3    Original Complaint, Declaration of Wayne S. Kreger RE: Venue Pursuant to Cal. Civ. Code 1780(c),

4    Notice of Case Assignment, and Alternative Dispute Resolution (ADR) Information Packet.

5

6

7    Dated: August 13, 2009                    MILSTEIN, ADELMAN, & KREGER, LLP

8

9

10                                             By:   Wayne S. Kreger
                                                     Jennifer Steinberg
11                                                   Attorneys for Plaintiff LISA
                                                     FREMONT, on Behalf of
12                                                   Herself and All Others Similarly
                                                     Situated

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2
NOTICE OF PROOF OF SERVICE OF SUMMONS

EXHIBIT 1  PAGE 79

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Jennifer Steinberg, 255335<br>MILSTEIN, ADELMAN & KREGER,LLP<br>2800 Donald Douglas Loop North<br>Santa Monica, CA  90405<br>    TELEPHONE NO: (310) 396-9600<br>ATTORNEY FOR (Name): Plaintiff | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF |
|---|
| Superior Court of California, Los Angeles County<br>600 S. Commonwealth Avenue<br>Los Angeles, CA  90005-4001 |

| PLAINTIFF/PETITIONER: Fremont | CASE NUMBER:<br>BC 417969 |
|---|---|
| DEFENDANT/RESPONDENT: Johnson & Johnson, et al. | |
| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:<br>ROC |

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.

2. I served copies of: Civil Case Cover Sheet, Civil Case Cover Sheet Addendum and Statement of Location , Complaint, Summons
Declaration of Wayne S. Kreger, Esq. Re: Venue Pursuant to Cal. Civ. Code 1780(c), Notice of Case Assignm
ADR Information Packet

3. a. Party served:  Johnson & Johnson, a New Jersey Corporation, doing business as RoC Skin Care

  b. Person Served: Steven M. Rosenberg - Person authorized to accept service of process

4. Address where the party was served:  1 Johnson & Johnson Plaza
    New Brunswick, NJ  08933

# BY FAX

5. I served the party
  b. by substituted service. On (date): 8/4/2009        at (time): 1:20 PM   I left the documents listed in item 2 with or
in the presence of: Karen Manfre, Paralegal
    (1) (business)  a person at least 18 years of age apparently in charge at the office or usual place of business of
      the person to be served. I informed him or her of the general nature of the papers.

    (4) A declaration of mailing is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. on behalf of:

  Johnson & Johnson, a New Jersey Corporation, doing business as RoC Skin Care

  under:     CCP 416.10 (corporation)

7. Person who served papers
  a. Name:       Dominic DellaPorte
  b. Address:    One Legal - 194-Marin
          504 Redwood Blvd #223
          Novato, CA  94947
  c. Telephone number: 415-491-0606
  d. The fee for service was:  $ 159.00
  e. I am:
    (1) Not a registered California process server.

8. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date:  8/6/2009

Dominic DellaPorte
(NAME OF PERSON WHO SERVED PAPERS)                    (SIGNATURE)

Form Adopted for Mandatory Use<br>Judicial Council of California POS-010<br>[Rev. Jan 1, 2007]       **PROOF OF SERVICE OF SUMMONS**       Code of Civil Procedure, § 417.10

           OL# 1767042

EXHIBIT 1  PAGE 80

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):* <br> Jennifer Steinberg, 255335 <br> MILSTEIN, ADELMAN & KREGER, LLP <br> 2800 Donald Douglas Loop North <br> Santa Monica, CA  90405 | TELEPHONE NO.: <br> (310) 396-9600 | FOR COURT USE ONLY |
|---|---|---|
| ATTORNEY FOR *(Name):*  Plaintiff | Ref. No. or File No. <br> ROC | |

| Insert name of court, judicial district or branch court, if any: <br><br> Superior Court of California, Los Angeles County <br> 600 S. Commonwealth Avenue <br> Los Angeles, CA  90005-4001 |
|---|

| PLAINTIFF: <br><br> Fremont |
|---|
| DEFENDANT: <br><br> Johnson & Johnson, et al. |

| PROOF OF SERVICE BY MAIL | | | | CASE NUMBER: <br> BC 417969 |
|---|---|---|---|---|

I am a citizen of the United States, over the age of 18 and not a party to the within action. My business address is 504 Redwood Blvd #223, Novato, CA 94947.

On 8/6/2009, after substituted service under section CCP 415.20(a) or 415.20(b) or FRCIV.P 4(d)(1) was made, copies of the:

    Civil Case Cover Sheet, Civil Case Cover Sheet Addendum and Statement of Location , Complaint, Summons, Declaration of Wayne S. Kreger, Esq. Re: Venue Pursuant to Cal. Civ. Code 1780(c), Notice of Case Assignment, ADR Information Packet

were mailed to the person to be served at the place where the copies were left by placing a true copy thereof enclosed in a sealed envelope, with First Class postage thereon fully prepaid, in the United States Mail at Novato, CA, California, addressed as follows:

    Johnson & Johnson, a New Jersey Corporation, doing business as RoC-Skin Care <br>     Steven M. Rosenberg <br>     1Johnson & Johnson Plaza <br>     New Brunswick, NJ  08933

I am readily familiar with the firm's practice for collection and processing of documents for mailing. Under that practice, it would be deposited within the United States Postal Service, on that same day, with postage thereon fully prepaid, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

Date:   8/6/2009

Tanya Oliver <br> One Legal - 194-Marin <br> 504 Redwood Blvd #223 <br> Novato, CA  94947

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

_____ <br> Tanya Oliver

OL# 1757042

EXHIBIT 1  PAGE 81

1

PROOF OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

4

I am employed in the County of LOS ANGELES, State of CALIFORNIA. I am over the age of 18 and not a party to within action; my business address is **2800 Donald Douglas Loop North, Santa Monica, CA 90405.**

5

6

On August 13, 2009, I served the foregoing documents described as:

7

*NOTICE OF PROOF OF SERVICE OF SUMMONS*

8

9

On interested parties in this action by sending a true copy of the document to the following parties as follows:

10

11

| Johnson & Johnson | Johnson & Johnson Consumer Companies, Inc. |
|---|---|
| Agent for Service of Process | Agent for Service of Process |
| Steven M. Rosenberg | CT Corporation |
| 1 Johnson & Johnson Plaza | 818 W. 7th St. |
| New Brunswick, NJ 08933 | Los Angeles, CA 90017 |

12

13

14

15

16

xxxx    (BY US MAIL) I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at Santa Monica, California. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

17

18

19

Executed on August 13, 2009 at Santa Monica, California

20

21

xxxx    (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

22

-----    (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

23

24

25

Jackie Moon

26

27

28

POS Rev (9-2008)

Page 1 of 1

EXHIBIT 1  PAGE 82



MILSTEIN, ADELMAN & KREGER, LLP
Wayne S. Kreger, State Bar No. 154759
wkreger@maklawyers.com
Paul D. Stevens, State Bar No. 207107
pstevens@maklawyers.com
Jennifer B. Steinberg, State Bar No. 255335
jsteinberg@maklawyers.com
2800 Donald Douglas Loop North
Santa Monica, California 90405
Telephone: (310) 396-9600
Fax: (310) 396-9635

Attorneys for Plaintiff,
Lisa Fremont

## SUPERIOR COURT FOR THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| LISA FREMONT, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>      vs.<br><br>JOHNSON & JOHNSON, a New Jersey Corporation, doing business as RoC Skin Care; JOHNSON & JOHNSON CONSUMER COMPANIES, INC., doing business as RoC Skin Care; and DOES 1 through 2000, inclusive,<br><br>      Defendants. | Case No.  BC 417969<br><br>CLASS ACTION<br><br>**NOTICE OF PROOF OF SERVICE OF SUMMONS** |

1
NOTICE OF PROOF OF SERVICE OF SUMMONS

EXHIBIT 1  PAGE 83

1    Attached hereto is the proof of personal service on defendant JOHNSON & JOHNSON

2  CONSUMER COMPANIES, INC. to Plaintiff's Summons, Civil Case Cover Sheet, Civil Case

3  Coversheet Addendum and Statement of Location, Original Complaint, Declaration of Wayne S.

4  Kreger RE: Venue Pursuant to Cal. Civ. Code 1780(c), Notice of Case Assignment, and Alternative

5  Dispute Resolution (ADR) Information Packet.

6

7

8  Dated:  August 13, 2009                                    MILSTEIN, ADELMAN, & KREGER, LLP

9

10

11                                                            By:  Wayne S. Kreger
                                                                  Jennifer Steinberg
12                                                                Attorneys for Plaintiff LISA
                                                                  FREMONT, on Behalf of
13                                                                Herself and All Others Similarly
                                                                  Situated
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2
NOTICE OF PROOF OF SERVICE OF SUMMONS

EXHIBIT 1  PAGE 84

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | FOR COURT USE ONLY |
|---|---|
| Milstein, Adelman & Kreger, LLP<br>2800 Donald Douglas Loop North<br>Santa Monica, CA 90405<br><br>TELEPHONE NO.: (310) 396-9600<br><br>ATTORNEY FOR: Plaintiff | |

| LOS ANGELES SUPERIOR COURT, COUNTY OF LOS ANGELES | |
|---|---|
| STREET ADDRESS: 111 N. Hill Street<br>MAILING ADDRESS: 111 N. Hill Street<br>CITY AND ZIP CODE: Los Angeles, 90012<br>BRANCH NAME: Central District/Stanley Mosk | |

| PLAINTIFF: LISA FREMONT, INDIVIDUALLY<br>DEFENDANT: JOHNSON & JOHNSON, A NEW JERSEY CORPORATION, ET AL. | CASE NUMBER:<br>BC417969 |
|---|---|
| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   f. other (specify documents):
   SUMMONS, COMPLAINT, CIVIL CASE COVER SHEET, NOTICE OF CASE ASSIGNMENT, ADR PACKAGE, DEC. OF WAYNE S. KREGER, ESQ., RE: VENUE, CIVIL CASE COVER SHEET ADDENDUM

3. a. Party served:
   JOHNSON & JOHNSON CONSUMER COMPANIES, INC., DOING BUSINESS AS ROC SKIN CARE

   b. Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made):
   MARGARET WILSON / PROCESSING AGENT

4. Address where the party was served:
   CT CORPORATION, 818 W. 7TH ST., LOS ANGELES, CA 90017

5. I served the party
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party on 8/5/2009 at 2:40 pm
   Description: Age: 60, Sex: F, Race/Skin Color: Caucasian, Height: 5'5", Weight: 130, Hair: Grey, Glasses: Y

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   d. On behalf of: JOHNSON & JOHNSON CONSUMER COMPANIES, INC., DOING BUSINESS AS ROC SKIN CARE
   under the following Code of Civil Procedure section:
   416.10 (corporation)

7. Person who served papers
   a. Name: Robert Hall
   Firm: AAA Attorney/BG's Process Serving
   b. Address: 4122 E. Chapman Ave. Ste. 24, Orange, CA 92869
   c. Telephone number: (714) 633-4167
   d. The fee for the service was: $81.75
   e. I am:
      (3)   a registered California process server:
            (i)   independent contractor
            (ii)  Registration No.: Process Server #5181
            (iii) County: Los Angeles

Page 1 of 2

PROOF OF SERVICE OF SUMMONS

Job Number 2009003957

EXHIBIT 1  PAGE 85

| PLAINTIFF: LISA FREMONT, INDIVIDUALLY | CASE NUMBER: |
| DEFENDANT: JOHNSON & JOHNSON, A NEW JERSEY CORPORATION, ET AL. | BC417969 |

8.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 8-11-05

Robert Hall
(NAME OF PERSON WHO SERVED PAPERS)

▶ (SIGNATURE)

Judicial Council of California
POS-010 [Rev. January 1, 2007]
Form adopted by rule 982.9

**PROOF OF SERVICE OF SUMMONS**

Job Number 2009003957

EXHIBIT 1  PAGE 86

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of LOS ANGELES, State of CALIFORNIA. I am over the age of 18 and not a party to within action; my business address is **2800 Donald Douglas Loop North, Santa Monica, CA 90405.**

On August 13, 2009, I served the foregoing documents described as:

### *NOTICE OF PROOF OF SERVICE OF SUMMONS*

On interested parties in this action by sending a true copy of the document to the following parties as follows:

| Johnson & Johnson | Johnson & Johnson Consumer Companies, Inc. |
|---|---|
| Agent for Service of Process | Agent for Service of Process |
| Steven M. Rosenberg | CT Corporation |
| 1 Johnson & Johnson Plaza | 818 W. 7th St. |
| New Brunswick, NJ 08933 | Los Angeles, CA 90017 |

xxxx   (BY US MAIL) I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at Santa Monica, California. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

Executed on August 13, 2009 at Santa Monica, California

xxxx   (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

------   (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Jackie Moon

POS Rev (9-2008)

Page 1 of 1

EXHIBIT 1  PAGE 87

1    **MILSTEIN, ADELMAN & KREGER, LLP**
     Wayne S. Kreger, State Bar No. 154759
2    wkreger@maklawyers.com
     Paul D. Stevens, State Bar No. 207107
3    pstevens@maklawyers.com
     Jennifer B. Steinberg, State Bar No. 255335
4    jsteinberg@maklawyers.com
     2800 Donald Douglas Loop North
5    Santa Monica, California 90405
     Telephone: (310) 396-9600
6    Fax: (310) 396-9635

7    Attorneys for Plaintiff,
     Lisa Fremont
8

9          **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

10             **FOR THE COUNTY OF LOS ANGELES**

11    LISA FREMONT, individually and on behalf of    Case No. BC 417969
     all others similarly situated,
12                                 **CLASS ACTION**

13           Plaintiff,

14             vs.                   **NOTICE OF CASE MANAGEMENT**
                                        **CONFERENCE**
15    JOHNSON & JOHNSON, a New Jersey
     Corporation, doing business as RoC Skin Care;
16    JOHNSON & JOHNSON CONSUMER
     COMPANIES, INC., doing business as RoC
17    Skin Care; and DOES 1 through 2000, inclusive,

18          Defendants.

19

20

21

22

23

24

25

26

27

28

Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

1
NOTICE OF CASE MANAGEMENT CONFERENCE

R E C E I V E D
AUG 18 2009
Joe Braunreuther

EXHIBIT 1 PAGE 88

1        PLEASE TAKE NOTICE that the Court has scheduled a Case Management Conference in

2   the above-entitled action to be held on November 13, 2009 at 8:30 am in Department 17 of the

3   above-entitled Court.

4        Plaintiff is ordered to give notice.  Attached hereto as Exhibit "A" is a true and correct copy

5   of the Court's Notice of Case Management Conference.

6

7   Dated:  August 13, 2009                                    MILSTEIN, ADELMAN, & KREGER, LLP

8

9

10                          By:     Wayne S. Kreger

                              Jennifer Steinberg

11                                Attorneys for Plaintiff LISA

                              FREMONT, on Behalf of

12                                Herself and All Others Similarly

                              Situated

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div align="center">2

NOTICE OF CASE MANAGEMENT CONFERENCE</div>

<div style="writing-mode: vertical">Milstein, Adelman &Kreger, LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405</div>

EXHIBIT 1  PAGE 89

# EXHIBIT A

EXHIBIT 1  PAGE 90

NOTICE SENT TO:

Kreger, Wayne S., Esq.
Milstein, Adelman & Kreger, LLP
2800 Donald Douglas Loope North
Santa Monica          CA   90405

ORIGINAL FILED

AUG 1 0 2009

LOS ANGELES
SUPERIOR COURT

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| LISA FREMONT | Plaintiff(s), | CASE NUMBER |
| vs. | | BC417969 |
| JOHNSON & JOHNSON ET AL | Defendant(s). | NOTICE OF CASE MANAGEMENT CONFERENCE |

**TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:**

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled for November 13, 2009  at  8:30 am  in  Dept. 17  at 600 S. Commonwealth Avenue, Los Angeles, California, 90005.

Pursuant to California Rules of Court, 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record.  You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order dismissing fictitious/unnamed defendants; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (GC 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions pursuant to LASC Local Rule 7.13, CCP Sections 177.5, 575.2, 583.150, 583.360 and 583.410, GC Section 68608 (b), and California Rules of Court 2.2 etc.)

Date: August 10, 2009                                         RICHARD E. RICO

                                                                          Judicial Officer

### CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named above:

[ ✓ ] by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed herein in a separate sealed envelope to each address as shown above with postage thereon fully prepaid.

[  ] by personally giving the party notice upon filing the complaint.

Date: August 10, 2009

                                        John A. Clarke, Executive Officer/Clerk

                                        by _____ Deputy Clerk

LACIV 132 (Rev. 01/07)                                   Cal. Rules of Court, rule 3.720-3.730
LASC Approved 10-03                                      LASC Local Rules, Chapter Seven

EXHIBIT 1 PAGE 91

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of LOS ANGELES, State of CALIFORNIA. I am over the age of 18 and not a party to within action; my business address is **2800 Donald Douglas Loop North, Santa Monica, CA 90405.**

On August 13, 2009, I served the foregoing documents described as:

*NOTICE OF CASE MANAGEMENT CONFERENCE*

On interested parties in this action by sending a true copy of the document to the following parties as follows:

| Johnson & Johnson | Johnson & Johnson Consumer Companies, Inc. |
|---|---|
| Agent for Service of Process | Agent for Service of Process |
| Steven M. Rosenberg | CT Corporation |
| 1 Johnson & Johnson Plaza | 818 W. 7th St. |
| New Brunswick, NJ 08933 | Los Angeles, CA 90017 |

xxxx   (BY US MAIL) I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States mail at Santa Monica, California. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

Executed on August 13, 2009 at Santa Monica, California

xxxx   (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

------   (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Jackie Moon

POS Rev (9-2008)

Page 1 of 1

EXHIBIT 1  PAGE 92

1   **MILSTEIN, ADELMAN & KREGER, LLP**
2   Wayne S. Kreger, State Bar No. 154759
    wkreger@maklawyers.com
3   Paul D. Stevens, State Bar No. 207107
    pstevens@maklawyers.com
4   Jennifer Steinberg, State Bar No. 255335
    jsteinberg@maklawyers.com
5   2800 Donald Douglas Loop North
    Santa Monica, California 90405
6   Telephone: (310) 396-9600
    Fax: (310) 396-9635

7   Attorneys for Plaintiffs,
    Lisa Fremont and the Proposed Class
8



9

10       SUPERIOR COURT FOR THE STATE OF CALIFORNIA

11             FOR THE COUNTY OF LOS ANGELES

12   LISA FREMONT, individually and on behalf of       CASE NO.:  BC417969
    all others similarly situated,
13                        **CLASS ACTION**
             Plaintiff,
14
               vs.
15                        PLAINTIFF'S OBJECTION TO
  JOHNSON & JOHNSON, a New Jersey           DESIGNATION OF THIS ACTION AS NON-
16   Corporation, doing business as RoC Skin Care;    COMPLEX
    JOHNSON & JOHNSON CONSUMER
17   COMPANIES, INC., doing business as RoC Skin
    Care; and DOES 1 through 100, inclusive,
18                        Complaint Filed: July 16, 2009
             Defendants.            Trial Date:    None Set
19

20

21

22

23

24

25

26

27

28

        PLAINTIFF'S OBJECTION TO DESIGNATION OF THIS ACTION AS NON-COMPLEX

RECEIVED

AUG 13 09

Joe Braunreiner

*Milstein, Adelman & Kreger, LLP*
*2800 Donald Douglas Loop North*
*Santa Monica, California 90405*

EXHIBIT 1  PAGE 93

Milstein, Adelman & Kreger LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

1   Plaintiff Lisa Fremont ("Plaintiff") submits the following objection and request for

2   reconsideration to the designation of this action as "non complex" and respectfully requests that the

3   Court enter an order designating this action "complex" under the California Rules of Court:

4

5   I.   INTRODUCTION

6   This is the exact type of case that Rule of Court 3.400 and the Los Angeles Superior Court

7   Complex Litigation Program were intended to address.   As set forth in Plaintiff's Complaint, this

8   action alleges that Defendants Johnson & Johnson Inc. and Johnson & Johnson Consumer

9   Companies, Inc. ("Defendant" or "J&J") made unsubstantiated advertising claims for its RoC Skin

10   Care Line Products ("RoC Products") from 2005 through the present.

11   Defendant is the world's second largest and most broadly based manufacturer of health care

12   products.   The company holds a significant share of the consumer and pharmaceutical markets, and

13   is the world's largest developer and manufacturer of medical treatment and diagnostic devices.

14   Johnson & Johnson is a multinational corporation with approximately 119,200 employees

15   worldwide, working in more than 250 operating companies in 57 countries.   Over the proposed class

16   period, Defendant has, on information and belief, sold several hundred thousand, if not millions, of

17   units of the RoC Products in California, alone.   Thus the size of the proposed Plaintiff class may

18   number in the millions

19   In accordance with Rule 3.400, the voluminous amount of documentary evidence associated

20   with Defendant's advertising, the "science" allegedly underpinning those advertising claims, along

21   with expert-intensive testimony related to that "science," will present issues which will be both

22   difficult and time-consuming for the Court to resolve.   Additionally, substantial pretrial motion

23   practice related to the motion for class certification is anticipated.   In sum, designation of this action

24   as "complex" will result in the efficient, cost-saving judicial management of this case which will

25   serve to benefit both the parties and the court system.

26

27

28

PLAINTIFF'S OBJECTION TO DESIGNATION OF THIS
ACTION AS NON-COMPLEX

EXHIBIT 1   PAGE 94

**II.    STATEMENT OF FACTS**

On July 16, 2009, Plaintiff filed a 53-page class action complaint (including Exhibits). (Attached hereto as Exhibit 1). On April 15, 2009, the case was ordered "non-complex" and assigned to Department 17 at Stanley Mosk Courthouse. (Attached hereto as Exhibit 2).[1] The order was served on August 6, 2009.

**III.    ARGUMENT**

Under Rule 3.400(c)(6), this action was provisionally complex as it alleges "claims involving class actions." An examination of the definition of a "complex case" under the Rules of Court along with the factors associated with complex cases, confirms that this action should be designated as complex.

Rule of Court 3.400(a) provides that: "[a] 'complex case' is an action that requires exceptional judicial management to avoid placing unnecessary burdens on the court or the litigants and to expedite the case, keep costs reasonable, and promote effective decision making by the court, the parties, and counsel." In making the decision to designate a case as complex, a variety of factors are considered:

(1)  Numerous pretrial motions raising difficult or novel legal issues that will be time-consuming to resolve;

(2)  Management of a large number of witnesses or a substantial amount of documentary evidence;

(3)  Management of a large number of separately represented parties;

(4)  Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court; or

(5)  Substantial postjudgment judicial supervision.

*See* Rule of Court 3.400(b).

Milstein, Adelman & Kreger LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

---

[1] The Order itself states that the case has been designated to Department 17 of 600 S. Commonwealth Avenue, Los Angeles, California, 90005. However, a call to the court confirmed that this was a typo and that in fact the case had been designated to Department 17 of Stanley Mosk Courthouse, located at 111 N. Hill Street, Los Angeles, California 90012.

PLAINTIFF'S OBJECTION TO DESIGNATION OF THIS
ACTION AS NON-COMPLEX

EXHIBIT 1  PAGE 95

A.    **Numerous pretrial motions raising difficult or novel legal issues that will be time-consuming to resolve**

In class action cases, the motion for class certification often occupies several months of litigation. The class certification motion may include several hundred exhibits submitted by both Parties, along with expert declarations and related evidence. The parties and the court will benefit from a Complex Court Judge's knowledge of the certification procedure, related discovery issues, and the law related to Bus. & Prof. Code §§17200 and 17500, and Civ. Code §1750, et seq.

Additionally, Plaintiff anticipates that both Parties will file early dispositive motions related to the question of whether Defendant possesses "competent and reliable" scientific evidence to substantiate its advertising claims for the RoC Products. These motions will include voluminous amounts of information, several scientific studies, and related expert testimony. Both motions will be time consuming to resolve.

B.    **Management of a substantial amount of documentary evidence**

As set forth in paragraphs 30-65 of the Complaint, this action centers on question of whether Defendant possesses competent and reliable scientific evidence to substantiate its advertising claims about the RoC Products from July 2005 through the present. As such, resolution of that question will not only involve substantial documentary evidence related to Defendant's advertising over a four year period, but also "the science" upon which it allegedly rests. Litigating this case in the complex litigation program will allow the Court to manage the discovery issues related to this volume of information. As such, the judicial supervision of the complex litigation program at the outset of this case will promote efficiency and serve to expedite resolution the case.

///
///
///
///
///

3

PLAINTIFF'S OBJECTION TO DESIGNATION OF THIS
ACTION AS NON-COMPLEX

Milstein, Adelman & Kreger LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

EXHIBIT 1  PAGE 96

C.   **Substantial postjudgment judicial supervision**

As a class action, the Court is required to supervise this case to protect the interests of absent class members both before and after certification.  Unlike other types of cases, class actions require significant supervision by the Court of any settlement or resolution.  The instant case is no different.  The Complex Litigation Program was crafted to address the unique supervision required of class actions such as this one.

IV.   **CONCLUSION**

For the reasons set forth above, Plaintiff objects to the designation of this action as "non complex" and respectfully requests that the Court enter an order designating this case as "complex."

DATED: August 13, 2009

MILSTEIN, ADELMAN & KREGER, LLP

By: _____
Wayne S. Kreger
Jennifer Steinberg
Attorneys for Plaintiff,
Lisa Fremont and the Proposed Classes

Milstein, Adelman & Kreger LLP
2800 Donald Douglas Loop North
Santa Monica, California 90405

4

PLAINTIFF'S OBJECTION TO DESIGNATION OF THIS
ACTION AS NON-COMPLEX

EXHIBIT 1  PAGE 97